Opinion of the court delivered by
Whyte, Judge.
This is an action of ejectment brought in the circuit court of Rutherford county, by the defendants in error, against Henry Trott, the plaintiff in error, which was tried in that court, April term, 1822. The bill of exception in the record shows, that several questions were made before the court on the trial. One of which was upon the act ■of 1799, ch. 14, which provides, that in every sale hereafter to be made of any lands under execution, where the defendant is in actual possession and occupation of the land so executed, it shall be the duty of the Sheriff, &c. so levying the execution, to serve the defendant with a written notice, stating that the execution is levied on said land, mentioning the time and place appointed, or to be appointed for the sale thereof, at least twenty days previous thereto. The 2d section contains this provision; “and every sale of land or tenements under execution, made contrary to the provisions of this act, shall be null and void to all intents and purposes.” It was proved on the trial that Henry Trott was in actual possession of the land in dispute, at the time the execution under which it *470 was sold was issued and levied upon it, and also when it was sold.
The plaintiffs below, claimed under a Sheriff’s deed to j^au[jaj M’Gavock, dated 7th January, 1822. This deed wag foanc[C(j on an execution from the Supreme Court, issued April, 1820, came to hand the 22d, and levied 24th. The land was sold 13th June following. This deed was objected to when offered in evidence, upon the ground that no notice was given to the defendant; but the court overruled the objection, and the deed was read. The plaintiff below introduced the Sheriff, M’Clennahan, and he was asked by the counsel of Trott, if he had given him the notice required by the act, which was objected to by the defendant’s counsel, and the objectiqn sustained. He was asked if he saw Henry Trott the day of the levy, which was also objected to, and the objection sustained. The defendants then offered Hugh Robertson, to prove thtit the Sheriff had admitted to him,' that he did not give the notice required by the act, which was objected to, and the witness not allowed to answer. The court, in charging the jury, said, no notice to the tenant in possession is necessary under the act of 1799 , ch. 14, sec. 1.
The principal question in this case is, whether the notice directed by the 1st sec. of the 14th ch. of the act of 1799, to be given by Sheriff to the defendant in possession, is necessary to be so given, to render the sale valid.
It is admitted by the counsel for the defendants in error, that if this act of Assembly of 1769, can operate on the sale in the present cause, it must render it void; but it is argued, it cannot so operate, on two grounds; — one is, because it is repealed by the act of 1813, c. 103; the other, if not repealed by the act of 1813, that the true and correct construction of the act of 1799, is the application of the 2d clause of the 2d section of the chapter, to the 1st clause of the same 2d section, which satisfies it, and precludes its extension to the 1st section of the chapter which embraces the 20 days’ notice.
The repeal of 1799, ch. 14, is not claimed as an express repeal, but as a repeal by implication from the act of 1813, *471 ch. 103, embracing the same subject matters, making other and further provisions regarding them, instituting new modes of proceeding, and thereby supplanting the act oí 1799. ' ‘ ^ * •
To arrive at a correct conclusion whether á repeal by implication is effected on the grounds taken by the counsel, and by force of the means alleged as productive of repeal, an examination of both acts must be had as to the objects they had in view, the remedies provided, and given by them for the purpose.
it is to be premised that both these acts are remedial; they profess to be passed for the purpose of mischiefs intended to be remedied by them, and the amendment of the laws in this state, relative to execution sales. The 1st, 1799, ch. 14, to sales of land under execution. The preamble to this act points out the mischiefs or evils requiring the interposition of the Legislature. It is in these words: — “Whereas, great injuries may arise, and insecu- , rity in land titles be produced from the present mode in use, of selling lands under execution; and such sales may be so ^secretly and clandestinely conducted, that real estates may be sold without any regard to their value; and fair claimants may be defrauded out of their just rights, by judgments and executions which have long lain dormant.” These two mischiefs or evils, are pointed out for redress; 1st, that execution sales, (under the then present mode,) may be so secretly and clandestinely conducted, that real estates may be sold without any regard to their value; — 2d, that fair claimants may be defrauded out of their just rights, by judgments and executions which have long lain dormant. The remedy provided and enacted for the first of these two evils, is, the object and purport of the first section of this chapter; and is this, that in every sale hereafter made, of any land under an execution, when the defendant is in actual possession and occupation of the land so executed,-it shall be the duty of the Sheriff levying such execution, to serve the defendant with written notice, stating that said execution is levied on said land, and mentioning the time and place appointed, *472 or to be appointed for the sale thereof, at least 20 days prey^ous t^erej;0. and where the defendants not in actual possession or occupation of such land so executed, it shall ^he 0f (-{jg Sheriff to advertise and publish at least -(.hree different times, in some newspaper within the state, the tract or tracts of land levied on; — the first at least 60 days before the sale, and mention the names of the plaintiff and defendant, and describe the land particularly, and mention the time and place of sale thereof.
The 2d evil is, that fair claimants may be defrauded out of their just rights, by judgments and executions that have long lain dormant. The remedy for this evil is the object of the 2d section of the chapter. Its purport and words are, “that no execution on lands shall be levied, or sale of lands or tenements under execution shall he made, which may affect the title of any person purchasing bona fide from, through or under a defendant in any judgment, unless such execution shall be issued and levied on such land, and sale thereof be made in twelve months from the time of the said judgment’s being rendered.” These are the requirements of the Legislature, and the provisions made by them respecting sales under execution, expressed in this act; and the attention of all men seems to be called upon, and forcibly directed to their observance, by the enactment, next in the same section following and accompanying them, being so placed, as it were, foe the sake of apublicity and notoriety equal to that of the requirements and provisions themselves; which enactment is in the following words: — “And every sale of lands or tenements under execution, made contrary to the provisions of this act, shall be null and void to all intents and purposes.” It will be noticed that this enactment constitutes the 2d clause or member in the frame of the 2d sec. and that its matter is distinct from that of the first clause or member of that section. The third and last clause or member, differs from both; it is as follows: Provided always, “That nothing herein contained, shall be so construed to affect the laws now in force, directing the sales of land for the payment of taxes or levies.” The 3d section of the act *473 gives a power to the defendant in execution, to divide the land levied, into divisions, to be sold, a division at a time, according to the defendant’s plan, &c.
It is not questioned by the argument, but that the court is bound to give effect to the second clause of the 2d tion of the act, if it applies to the case under the first section. But it is argued that its proper application is to the immediate preceding case of sale under execution, contained in the first clause of the same 2d sec. in favor of a bona fide purchaser; and not to the case of a sale under execution, provided for by the 1st sec. to which the sale in this record belongs; and it is argued, that this construction is indicated; 1st, by its relative position in place; to the provision in favor of a bona fide purchaser; — and second, from the great consideration the law entertains for the bona fide 'purchaser — his case alone induced the protection of the nullifying clause. To this it may be answered, that the local position in an act of Assembly, of a general enactment, admitting In words an application to both of tlie cases of sale under execution comprised in the act, is not important; Its extent will not thereby be confined, or its operation lessened, unless it can appear from other parts of the acts, such confined operation comports with the spirit oí the act, and of necessity, authorizes a departure from its words — Let us notice the important object of this act, or its spirit. It is to prevent abuses in execution sales. This is its spirit — its declared intention. The preamble, which is styled the key to unlock the mind of the Legislature, says, “that from the present mode of selling', land under execution, 1st, such sales' may be so secretly and clandestinely conducted, that real estate may be sold without any regard to their value;” and secondly, “that fair claimants may be defrauded of their just rights, by judgments and executions which have long lain dormant.” These are the evils in the mind or view of the Legislature, to be redressed; — they are two in number. The Legislature takes them in the order they are presented, and applies the remedy. To the first evil, the secret and clan *474 destine sale, is applied the provision of the first see. for remedy, a part of which is twenty days’ notice of the levy, with time and place of sale in writing, to the defendant ac£ua] possession. To the second evil, the just right &c-defrauded by a dormant judgment and execution, is applied the provision of the second section and first clause therein, for remedy, which says, “no sale under execution shall be made, unless the issuing levy and sale shall he within twelve months from the time the judgment was rendered.”
Now from this view it is apparent upon the face of the act, that the object and spirit of the act was to provide against these two abuses in execution sales, then subsisting at the time of passing the act, or which might exist under the then present mode in use. The one abuse or evil was as much in the contemplation of the Legislature, as the other; both are stated as the causes requiring the interposition of Legislative redress; — both are acted upon and redressed. The one by the first section — the other by the second. Why then should not the provisions for the remedying both evils be equally protected and enforced by the clause or enactment, rendering null and void to all intents and purposes the sale. But it is said, its contiguity to the second provision, attaches the clause of nullifying the sale to it alone, and is exclusive to the sale under the first provision. It is apparent that this argument is not supported by the act. Such exclusion of the first provision or section, does not accord either with the purport and design of the whole act taken together, or with the words and expression of the clause taken singly; the former requiring, and the latter giving that protection to both. Again, as complying, with the spirit and intention of the act, or protecting both the provisions, the clause would not occupy a more appropriate position in its frame, with reference either to the antecedent matter, or subsequent matter contained in it. When the two evils, the object of the act, were provided for, then, and not before, properly came the protecting clause for those provisions, by rendering null and void sales made in op *475 position to them. The whole context of the act proves the correct application of the clause to be, to the part alone of the act that precedes the clause itself; and the want of fitness, for application to the subsequent part.
An additional reason appearing on the face of this act, proves that the first section is within the purview and protection of the second clause of the second section. The privilege, which is given by the second section of the act, to the defendant in the execution, is an important one, viz, of dividing the lands and tenements levied on, in such divisions as he may think proper; and on the day of sale, to have them sold, a division at a time, according to the plan of division delivered by him to the Sheriff. Now this division can scarcely fail to be a matter of consequence to the defendant in any and every possible case that may exist: it would seem to be least so when the fair value of the land does not exceed the amount of the execution; or even does not reach that amount, as then the whole must go. But even in this case, it is not without its advantage to the defendant. He may know that one part of the land may suit one neighbor, from its contiguity to him; and other concomitant causes may also exist, by which a purchase of that particular specified part is a desirable object to him, which, when consolidated in the general mass of the whole, would be beyond his power or means of purchasing; or, perhaps then, aside from his wish to do so, the particular situation of this neighbor may be applicable to all the neighbors whose lands adjoin the executed premises. For the want of the twenty days’ notice, all this advantage would be lost to the unfortunate poor — his debt not extinguished, and but little diminished for want of this division, with a balance pending, his lessened capacity to pay, and cramping his honest exertions with the constant recurring reflection of his abject state. Put the case where the land levied on is something more than will, upon sale by a division, satisfy the execution. The sale is to be according to the plan furnished by the defendant; the privilege clothes him with the power of reserving his house with his curti- *476 kge as the last division. Thus he will not be turned out of house and home, and not have where to lay his head, if stripped of liis other all. The Legislature, no doubt, had this very case in their view m penning the provision, an(j eXpresse¿ wor¿ «such,” guided by the principles of the common law, which held a superior respect for the freehold, and for that of the house and curtilage, styling it his castle. But it is in the case, where the fair value of the land executed, much exceeds the amount of the execution, that this privilege becomes vastly important to the owner, the defendant in possession. When the value is a large sum, it necessarily follows, that a great sacrifice of property is the almost inevitable consequence, inasmuch as but a comparative lew can possess such means —and of this few, perhaps not one, wishes to make such large investment. An observation of men and things in the ordinary transactions of the population of the State, informs us, that the fair acquisition for a full consideration of a large landed property is seldom the subject of a single purchase; that its accumulation is gradual, and its quantum indebted to piece-meal additions, the labor of a life, and the work of an age. To prevent its prostration, under judicial sanction, by the instrumentality of an execution without a division, which would certainly happen, et cui bono? and to ensure equal justice on both sides, was one of the objects this privilege had in its view.
Again, an internal evidence, proceeding from the nature of the two evils themselves, proves the proposed restriction of the nullifying clause to the second, or latter evil, erroneous. The first evil is of a more general nature, and capable of existing, and does in fact and practice exist, in a much more numerous class of cases than the second; so much so as scarcely to be admissible of comparison. Can a construction then be well founded, which limits the protective power of a statute to a special case, and that of much less frequent occurrence, and withholds that protection from, or rather denies it to a more general case, of common occurrence, having thereby a more extended action to the prejudice of the interest, the re *477 pose and the morals of ihe community. — It cannot be. We are of opinion, therefore, that this restrictive application of the clause, rendering null and void to all intents and purposes, to the first clause of the second section of the 14th ch. of the act of 1799, is not the true construe-M tion.
The next question is, does the act of 1813, ch. 103 repeal the act of 1799, ch. 14. The repeal contended for by the argument, is a repeal by implication. In this examination, the first thing tobe noticed is, the object and purview of the act of 1813. The preamble, as before remarked, on the act of 1799, is an indicium towards the unfolding the intention of the Legislature, in making the act. It runs in these words; “whereas, it is represented to the General Assembly, that much oppression is practiced on the good people of this State, by the conduct of some of the Sheriffs thereof, and their deputies, purchasing property at the sales of each other; and also in ad^ vertising such sales.” Here we see the moving principle"1 actuating the General Assembly to this legislative measure, was the conduct of some Sheriffs and their deputies, in two particular cases relative to their official duties, which are respectively designated, to wit,- — the purchasing of property bv them at each others sales, and in the advertising of sales; and they apply the remedies, by the first section, to the first case, a prohibition against such purchasing, either directly by themselves, or indirectly by others; — constables and coroners are included jn this prohibition, and its action extends to every official sale, whether the sale be for taxes, or any other kind of execution or decree whatever: — and for a breach of this prohibition, the party shall be liable to indictment, in the county or circuit court where the offence was committed, and upon being found guilty, shall be removed from office, and be also liable to an action for damages, by the party injured. The second section of this act applies the remedy to the evil stated in the preamble, of advertising sales; and directs, that hereafter, when any Sheriff, &c. shall levy an execution on lands, negroes, horses, or any *478 other property, he shall advertise the time and place of sale, at four places at least, in his county; one of which shall be at the court house door of his county, another at the most public place in the neighborhood of the party W}10SG pr0perty js to be sold, and at the two other most public places of his county. The presuming to sell without such advertising, makes the offender liable in the same manner as pointed out in the first section, with a proviso, that nothing herein shall he construed to prevent the necessity, or supersede the advertisement of the sale of the land in- public newspapers, as heretofore. In the examination of the act of 1799, ch. 14, which we have already made, we have seen what was the object of the Legislature in that act, the evils proposed to be remedied, and the remedies afforded by the provisions enacted; and which need not again be repeated. We discover upon a compared view of both acts, 1799 and 1813, instead of finding in their correlative parts, a sameness of evils, or of subject matter, with new and other remedies applied incompatible with the former remedies, so as to operate a repeal of the former by the latter, we find the action of the Legislature in the latter act directed in aliam rem el in alio modo. The variation from the act of 1799, effected by the act of 1813, ch. 103, and introduced by its 2d section, is but small; resting in the little circumstances of increasing the number of county advertisements, with their location; and the mannei of coercing the Sheriff and constables to the performance of this addition to their official duties, having their principal operation on the evils, the object of redress by 1813, and only collaterally and slightly touching 1799, by an indirect action in concurrence with 1813. But these circumstances, though little, when contrasted with the important provisions of 1799, are not therefore to be disparaged; — they are, as far as they apply, in their nature, cumulative remedies to the evils proposed to be redressed by the act of 1799, and as far as their action extends, it is in accordance with the first principle of that act, to wit, — the prevention of the great injuries that may arise from secret and *479 clandestine sales, and from dormant judgments and exc- ,. cutions.
We are of opinion, therefore, that 1813, ch. 103, sec. 2, instead of superseding tacitly, by inconsistent enactments, 1799, ch. 14, is auxiliary to it in promoting its views, by spreading information, circulating publicity, counteracting frauds, and bringing into market by fair and proper means, to the general good of society, the property that may be so unfortunately, bat justly, exposed to that situation; all which are consistent, and standing well together with 1799, not infringing on its important parts.
There being no ambiguity in this second clause of the second section of the 14th chapter of the act of 1799; on the other hand, a clear intention of the Legislature, plainly expressed, in which case the rule of law is, that the intention of the Legislature must be obeyed; see 2 Cranch 380, United States vs. Fisher. This act, therefore, having said — “and every sale of land or tenements under execution, made contrary to the provisions of this act, shall be null and void to all intents and purposes,” it becomes the duty of this court to decide, that the sale of the land under the execution against the plaintiff in error, is thus void, because the defendant in the execution was not served by the Sheriff with a written notice, stating the levj-, time and place appointed, or to he appointed for the sale thereof, at least twenty days previous thereto. In deciding so, they have no discretion; — the law is imperative, and the court only the organ by which it is pronounced.
Many instances are to be found in the books, of titles, which have been acquired contrary to the^provisions of acts of Assemblies, being cut down by clauses declaring them void; the expression of which, though sufficiently so, is less strong than the present of this act of 1799, ch. 14, sec. 2, clause ;2d. The case of Preston vs. Browder, 1 Wheat. 115, is an instance of such decision of title, acquired contrary to the act of 1777, ch. 1, sec. 9, which says, that “every right, title, claim, interest or property, &c. *480 obtained in manner by this act directed, &c. or which shall be obtained by fraud, elusion, or evasions of the restrictions thereof, shall be deemed, andaré hereby decla-J red, utterly void.
Another instance in the same book, page 154, m the case of Danforth’s lessee vs. Thomas, where the title was acquired in contravention of the same act, and other acts, as also the act of 1783, ch. 2, sec. 6, last clause, which says, “and all such entries and grants thereupon, if any should be made, shall be utterly void.”
This was a case of error to the circuit court for the District of East Tennessee. The plaintiff claimed by virtue of a warrant from the State of N. Carolina, dated Dec. 1791. The defendant claimed under a grant from the State of Tennessee, date Jan. 1809. The defendant by his counsel objected to the plaintiff’s grant being admitted in evidence, on the ground that it was for land, which the statutes of N. Carolina had forbidden to be entered or granted. The court sustained the objection, and verdict and judgment for defendant; and the supreme court of the United States affirmed the judgment. This case is perfectly analogous to the present, and supports the decision now made therein.
Therefore, not because the circuit court refused the rejection of the Sheriff’s deed as prima facia evidence,but because the impeaching evidence to the deed shewing the twenty days’ notice-in writing according to the acts as rendering the deed imperative, was rejected; and also because the circuit court charged the jury in this cause,' although Henry Trott, one of the defendants in this execution, was tenant in possession of the land in dispute, when the same was levied upon and sold by execution, the sale was good and passed the title, although no written notice was given by the Sheriff to said tenant in possession, as required by the act of 1799, which charge is erroneous. The verdict of the circuit court must bS set aside and also the judgment rendered thereon, and the cause remanded to the same court from whence it came for a new *481 trial to be had therein; in which, direction shall be given pursuant to the law, as declared by this opinion.
Fletcher, Collinsworth and Rucks, for the pl’ff. in error.
F. B. Fogg, for the deft’s, in error.