Nicholson, C. J.,
delivered the opinion of the Court.
In May, 1862, Charles Jones sold to Paul Gregg a tract of land of seventeen acres, near Memphis, for $5,000, of which $2,000 was paid in cash, and three notes, for $1,000 each, payable on time, were executed by Paul Gregg and George E. Powell for the balance. An absolute deed was executed by Jones to Gregg and Powell, with covenants of warranty, reserving no lien for purchase-money, and reciting that the purchase-money was paid. On the same day, Gregg and Powell executed a deed of trust of the land to Ayres in trust to secure the payment of the three notes given for the balance of the purchase-money, with power to sell for the satisfaction thereof in the event of default in the payment. Powell really paid nothing toward the land, and claims no interest in it.
Gregg died without having paid the three notes aforesaid, leaving his widow, Anna Gregg, and two minor children * surviving. The three notes were assigned to Millington by Jones.
Anna Gregg files her bill, stating the foregoing facts, and making Millington, Jones, Powell, and her minor children defendants. She prays that the land *454 be sold to pay the balance of the purchase-money, and, alleging that there would be an excess, she prays for dower therein, and the excess be vested in' other lands for a home for her and her children.
Millington answered and admitted the main allegations of the bill, and joined in the prayer for a sale of the land. The minors answer formally by guardian ad litem. The other defendants failed to answer, and the bill was taken for confessed as to them.
The Chancellor decreed a sale of the land, and at the sale the same brought only about $3,100, which was less than the balance due on the land.
Upon the confirmation of the report of sale, Anna Gregg moved the Court to refer the question to the Clerk and Master to ascertain and report what amount of the sum for which the land sold would be equal to her dower therein. The order of reference was made, and, upon the report of the Clerk and Master that her dower would amount to about $600, the Chancellor refused to allot dower, holding that the purchase-money constituted a prior lien.
From this decree Anna Gregg prosecuted her writ of error to this Court.
It is first insisted that complainant is estopped from claiming dower by the admissions in her bill, in which she claimed dower out of the surplus, after satisfying the balance of the purchase - money. <• It is evident that her bill was filed under the belief that the land would sell for an amount sufficient to pay the balance of the purchase-money, and leave a sufficient surplus to purchase a home for herself and minor children. *455 It is farther evident that her bill was filed under a-' misapprehension as to her rights, if the law be as now maintained by her counsel, that her right to dower is superior to that of the holder of the notes for the balance of the purchase-money. The admissions and allegations having been made under a mistake as to the facts and as to her rights, she is not thereby estopped from asserting her rights in accordance with the facts, as they are shown in the pleadings: Singleton v. Ake, 3 Hum., 626.
But the main question in the case is, whether the lien of Millington, by virtue of the trust deed, overreaches the widow’s right of dower? As Jones secured an express lien on the land for the satisfaction of the three notes, of $1000 each, therein provided for, the transfer of the notes to Millington invested him with the right to enforce the security as fully as Jones could do.
When Jones sold the land to Gregg he had his election to secure the payment of the balance of the purchase, either by executing title bond to Gregg and retaining the legal title, or by executing a deed and reserving a lien on its face to secure the payment of the unpaid purchase-money, or to execute a deed without reserving any express lien, but relying on the lien which would then be implied by law. He chose not to adopt either of these modes of securing and enforcing his vendor’s lien. If he had adopted either of the two first-named modes, it is well settled that his lien would have been superior to the widow’s dower; and by some authorities it is held that the *456 implied' lien secured by the third mode would, in like manner, have been superior to the widow’s dower, but on that point we give no opinion, as it is not necessary.
Jones elected to adopt neither of these modes of security, but entered into a contract with Gregg, by which he conveyed to him the absolute title to the land, acknowledging the payment of the consideration of $5000, and reserving no lien, upon Gregg immediately conveying the land to Ayres, as trustee, to secure the payment of the three notes of $1000 each, the balance of the purchase-money thereof, with power to sell upon default of payment of either "note. By the execution of these deeds, Jones waived all his rights or liens as vendor merely, and relied upon his contract to secure the payment of the notes by a more speedy process than he could have availed himself of by relying simply on. his vendor’s lien in either of the three modes specified. Although the three notes were given for the land, they ceased to have attached-to them the vendor’s lien whenever Jones elected to rely upon his contract to secure payment by means of the enforcement of his trust deed.
It is not material whether the two deeds were executed simultaneously or not, and therefore we deem it unnecessary to consider the question as to the effect of a simultaneous conveyance upon the seizin or ownership' of Gregg. It is clear, that by his deed Jones divested himself of his légal title and vested it in Gregg, and that by the immediate conveyance of the legal title to Ayres in trust, Jones had only the equitable *457 title as security for his three notes. The trust deed was made by Gregg, in whom Jones had vested the legal title, and as Gregg died before the land was sold under the trust deed, the case falls directly under the ’section 2399 of the Code, which enacts that the widow “shall be entitled to dower in lands mortgaged or conveyed in trust to pay debts, when the husband dies before foreclosure of the mortgage, or sale under the deed.”
The deed from Gregg to Ayres was made in trust to pay a ■ debt from Gregg to Jones. The statute makes no distinction as to the kinds of debts to be secured. Upon whát rule of construction can we hold, that the Legislature intended to exclude from the operation of 'the language used, debts created for land, any more than debts founded on any other consideration? We have before us a deed of trust, made to secure the payment of a debt created for land; we have before us the fact that the maker of the trust deed died before the trust was executed by the sale of the land, and that he left surviving him a widow. Because the debt secured by the deed was created for the land, we are called upon to make it an exception to the statute, and to hold that it shall overreach the right of dower in the teeth of the statute. The vendor once had the right to assert the superiority of his lien to the widow’s right of dower, but he elected to make a contract by which he ceased to rely on his vendor’s lien, and chose to rely on his trust deed. By so doing he brought his debt under the operation of the express provision of the statute, and it is not *458 in our power to restore him to his rights as a vendor.
The decree of the Chancellor is reversed and a decree will be rendered allotting dower to .the complainant. The defendants will pay the costs of this Court and "of the Court below. ' “