F. M. WRIGHT *v.* L. E. BLACK, SHERIFF.

(*Nashville.* December Term, 1928.)

Opinion filed June 15, 1929.

256

MORRISON & MORRISON, for complainant, appellant.

JOHN G. CREWS, for defendant, appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

J. F. May conveyed to the complainant Wright, for a consideration that has been paid, a tract of land in Lawrence County on May 6, 1925. The deed, however, was not filed for record until March 31, 1927. J. F. May died September 8, 1926, intestate, several months before his deed to Wright was registered.

Among other heirs, J. F. May left a son, B. F. May. Prior to the death of the elder May, the Farmers and Merchants Bank of Ethridge, Tennessee, recovered a judgment against his son B. F. May. On September 28, 1926, the bank procured an execution on its judgment and had a levy made on the undivided interest B. F. May was supposed to have as heir of his father in the land sold and conveyed to complainant Wright by the unrecorded deed aforesaid.

The bill herein was filed against the sheriff and the bank to restrain proceedings under this execution. A demurrer was filed, which was sustained by the chancellor and the complainant appealed to this court.

The chancellor seemed to be of opinion that, by reason of our recording Acts, the creditor of the son and heir was entitled to reach the apparent interest of the heir in the land, regardless of the prior unrecorded deed made by the father to said land. The chancellor's conclusion is probably sustained by the decisions of other courts, construing the recording Acts of other States, but we think the result reached cannot be justified under Tennessee statutes.

Our earlier registration laws were numerous. They were recapitulated in the opinion of Judge PECK in *McCulloch* v. *Eudaly,* 11 Tenn. (3 Yerg.), 346, and generally discussed in *Washington's Lessee* v. *Trousdale,* 8 Tenn. (M. & Y.), 385. These Acts culminated in chapter 90 of the Acts of 1831, which statute undertook to cover the whole subject and upon which statute Article IX, chapter 3 of the Code of 1858 was based. For the purposes of this discussion it is sufficient to say that under these laws conveyances of land, slaves, marriage settlements and certain other instruments, unless registered, were declared ineffective as to creditors and purchasers without notice.

In *McCulloch* v. *Eudaly,* 11 Tenn. (3 Yerg.), 346, the father conveyed by deed which his purchaser withheld from registration for several years. After the father's death, his son and heir conveyed the same land to other purchasers who promptly recorded their deed. Later the vendee of the father recorded his deed. It was held that the vendees of the son were purchasers within the protection of the registration laws and their title was held superior to that of the father's vendee. We do not find this case followed or mentioned in any subsequent decision of this court.

In *Morgan* v. *Elam,* 12 Tenn. (4 Yerg.), 373, the court had before it a marriage settlement executed in Virginia but not recorded there, the registration laws of that State being similar to those of Tennessee. It was held that the unregistered settlement was good except as against the creditors of the grantor, in that case the wife, and that the property covered could not be reached by the husband's creditors. It appears that some of the court yielded to this construction of the Virginia statute with reluctance and did so only on authority of decisions of the Supreme Court of the United States and of the Virginia Court of Appeals. *Pierce* v. *Turner,* 5 Cranch, 154, 3 L. Ed., 64; *Laud* v. *Jeffries,* 5 Rand, 211.

In *Hamilton* v. *Bishop,* 16 Tenn. (10 Yerg.), 33, *Morgan* v. *Elam,* was followed and an unrecorded conveyance of slaves by a father to his daughter to her separate use was held good against her husband's creditors and invalid, under Tennessee statutes, only as against creditors of the grantor, the father.

*Baldwin* v. *Baldwin,* 21 Tenn. (2 Humph.), 473, was a case similar to *Morgan* v. *Elam,* and a like result was reached, the court there construing the Tennessee registration laws.

In *Ocoee Bank* v. *Nelson,* 41 Tenn. (1 Cold.), 186, an unrecorded title bond, subject to registration under chapter 90 of the Acts of 1831, was held valid in litigation between the grantee under the bond and his creditors. The court said:

"It is true, that by the Act of 1831, chapter 90, section 1, 'all bonds or agreements, in writing, for the conveyance of real or personal property,' are required to be proved and registered in the manner provided, and if not thus proved and registered they are 'null and void, as to existing or subsequent creditors,' and also as

against *bona-fide* purchasers without notice. But it must be borne in mind, that it is only as against creditors of the grantor, that the instrument is void, for want of registration. This has been repeatedly held," citing *Morgan* v. *Elam, supra,* and *Baldwin* v. *Baldwin, supra.*

Such was the law declared in cases arising under our statutes prior to the Code of 1858. We have heretofore noted that the provisions of the Code of 1858 with reference to the registration of instruments were based on chapter 90 of the Acts of 1831. Some changes, however, were made in the Code and, upon the question before us, the Code made the law still more definite.

Section 12 of Chapter 90 of the Acts of 1831 provided that "all such deeds and other instruments mentioned in the first section of this Act, not so proved and registered as aforesaid, shall be null and void as to existing or subsequent creditors, or *bona-fide* purchasers without notice, etc."

Section 2075 of the Code of 1858 (Thompson's-Shannon's Code, sec. 3752), provided that "any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or *bona-fide* purchasers from, the makers without notice, etc."

Thus by legislative declaration, it is only creditors of, or *bona-fide* purchasers from, *the makers* of an unregistered deed who may disregard such instrument.

Since the adoption of the Code of 1858, this court seems to have uniformly restricted the protection and benefits to be derived from the section quoted to creditors of, and purchasers without notice from, the makers of unrecorded instruments.

In *Leech* v. *Hillsman,* 76 Tenn. (8 Lea), 747, an instrument as recorded appeared to be an absolute deed. In reality it was a mortgage and the mortgagor was allowed to prove the true character of the instrument as against a creditor of the mortgagee who had levied on the land. The court said:

"It is clear the language of our registration laws do not include nor control the question now before us. They only fix the rights and give preference to existing or subsequent creditors or *bona-fide* purchasers of, and from the maker of the deed. They do not profess to, nor do they in fact refer to, or regulate the rights of a creditor, as we have said, in a case like the present."

*Leech* v. *Hillsman, supra,* was followed, quoted and approved in *Bryant* v. *Bank,* 107 Tenn., 560. In *Wilkins* v. *McCorkle,* 112 Tenn., 688, 697, this court summarized our registration laws as follows:

"It is perceived there are five leading propositions embraced in the foregoing sections: (1) That, as between the parties themselves and their heirs and representatives, such instruments take effect and are good without regard to registration; (2) that they also take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except creditors; (3) that as to creditors (that is, of the vendor) they are inoperative, ineffective, and practically non-existent until they are noted for registration on the books of the register; (4) that as to all other persons (that is, all not embraced in the preceding classes) they are equally inoperative, ineffective, and non-existent until so noted for registration; (5) that upon being so 'noted for registration' they become at once 'notice to all the world,' and so effective as to all the world."

It may be conceded that the weight of decided cases construe the registration laws of other States to protect a purchaser without notice from the heir against a prior unrecorded conveyance of the ancestor. See cases collected in Notes 36 L. R. A. (N. S.), 328, Annotated Cases, 1912B 1289, in both of which publications *Hallett* v. *Alexander,* 50 Colo., 37, appears, reaching the conclusion indicated upon elaborate consideration. The recording Acts, however, usually declare unregistered conveyances bad merely as against "subsequent purchasers" —not subsequent purchasers from the maker of the instrument. The words quoted are read to include subsequent purchasers from the heir or devisee as well as from the grantor. The reasons for such a holding are perhaps nowhere more strongly stated than in our own, case of *McCulloch* v. *Eudaly, supra.* As before mentioned, however, that case has not been since referred to by this court and the conclusion therein could scarcely be reconciled with *Morgan* v. *Elam, supra; Hamilton* v. *Bishop, supra,* and *Baldwin* v. *Baldwin, supra.* It is not possible to follow *McCulloch* v. *Eudaly,* at this time in view of section 2075 of the Code of 1858.

The protection of section 2075 of the Code of 1858 is confined alike to creditors of the maker and to purchasers from the maker. Neither creditors of the heir nor purchasers from the heir are beneficiaries of such statute.

For the reasons stated, and upon the authorities reviewed, we feel obliged to reverse the decree of the chancellor and to award the injunction as prayed.

Another point is made by counsel for the bank on account of the circumstance that the deed made by J. F. May to complainant Wright seems to refer to the land conveyed as being located in Giles instead of Lawrence

County. This is plainly an error which may be corrected in a proper proceedings, if found necessary. This case is before us on demurrer and the demurrer admits that the land conveyed to complainant Wright is the same land upon which the bank's execution was levied and the levy shows that the land was in Lawrence County.

Tax costs to the bank.