A. C. HAMES and wife, MARCELLA HAMES, Appellants, v. ARCHER PAPER COMPANY, Appellee. —319 S. W. (2d) 252.

Eastern Section at Knoxville. September 2, 1958.

Certiorari denied by Supreme Court December 12, 1958.

2

Atchley & Atchley, of Chattanooga, for appellants.

Strang, Fletcher, Carriger & Wallace, of Chattanooga, for appellee.

4

BEJACH, J. ■ This cause involves an appeal by Mrs. Marcella Hames from a decree of the Chancery Court of Hamilton County, Tennessee, dismissing her bill filed for the purpose of removing a cloud on the title to a tract of land in Hamilton County, Tennessee, and adjudging that the Archer Paper Company had a superior title to said tract of land. The land in question is Lot 37, Block A of Robin Sterchi Subdivision as shown by Plat Book 15, page 24, in the Register's Office in Hamilton County, Tennessee. While this cause was pending in the lower court, one of the original complainants, A. C. Hames, died and his will was probated in Catoosa County, Georgia. Under said will, Mrs. Marcella Rehring Hames, his widow, was appointed executrix, and an order was entered in this cause directing that she be permitted to prosecute same, as executrix of her deceased husband, and individually in her own right; and that the death of the deceased complainant would not abate the right of complainants in this cause.

The proof in the cause was taken by depositions. There is little if any dispute about the facts. The case turns on the construction and application of the Recording Statute of Tennessee, in connection with the statute which creates a lien in favor of a judgment creditor. The material facts are as follows. The land involved in this cause, a tract of slightly less than one acre, had formerly belonged to Robin Sterchi and Juanita Sterchi. Under date of September 20, 1947, Robin Sterchi and Juanita Sterchi, his wife, conveyed this lot to Fred Sterchi, Jr., but the deed making this conveyance was not recorded until October 9, 1951. Under date of October 8, 1951, acknowledged before a Notary Public on October 10, 1951, Fred Sterchi, Jr., and wife Muirtelle Sterchi, con-

veyed this lot to A. C. Hames, Trustee, but said deed was not recorded until February 10, 1954. Mr. and Mrs. Hames never resided on the property, but fenced same, built a barn on it, and used it for a horse lot. The barn remained there until the latter part of 1954 when it was torn down and removed to the State of Georgia, Mr. and Mrs. Hames having at that time removed their place of residence to that state. In the meantime, on June 13, 1953, Archer Paper Company, the defendant in the lower court, and the appellee in this court, filed suit in Part I of the Chancery Court of Hamilton County, Tennessee against Fred W. Sterchi, Jr., seeking a decree against him for $1660.32 for an indebtedness alleged to be due for merchandise sold and delivered. On January 21, 1954, in said suit, same being cause No. 32333, a final decree was entered granting to the Archer Paper Company a recovery in the amount of $1660.12, which decree was duly enrolled on January 21, 1954, in Book 5-J, at page 253 of the Records of the Chancery Court of Hamilton County. An execution was issued on said decree which was on the 23rd day of February 1954 levied by the Sheriff of Hamilton County on the land here involved and other lots in another subdivision, same being levied on as the property of Fred Sterchi, Jr. On March 1, 1954, the Honorable Clifford Curry, Chancellor of Part I of the Chancery Court of Hamilton County, entered an order in said cause No. 32333 directing the Sheriff to proceed with the sale of said property. On that date, March 1, 1954, the Clerk and Master issued an order of sale to the Sheriff of Hamilton County, pursuant to which the Sheriff, Rex Richey, after advertising the property levied on as required by law, proceeded on April 10, 1954, to sell the land. According to the Sheriff's return, there were no bidders for the other lots levied on, but the lot

here involved was sold by him to the Archer Paper Company for the sum of $1100.00. The Sheriff's deed conveying said property to the Archer Paper Company was executed on May 27, 1954 and was filed for registration with the Register of Hamilton County on June 9, 1954, same now being recorded in Book 1142, page 500, Register's Office of Hamilton County, Tennessee. The bill in this cause was filed in Part II of the Chancery Court of Hamilton County October 19, 1956 for the purpose of removing the said Sheriff's deed as a cloud on the title to the land involved in this cause. Same is No. 33958 in the Chancery Court of Hamilton County, Tennessee. The theory of complainants' bill is that complainants' title is superior to that conveyed by the Sheriff's deed because: 1st. Complainants' deed was recorded February 10, 1954, which was prior to the levy made by the Sheriff on February 23, 1954; 2nd. The Sheriff's levy was void because same was levied on several different lots, the lot here involved being one of them, some of said lots being in one subdivision and some in another; 3rd. The Sheriff's deed conveying the lot here involved was void, the land conveyed by same being adversely held and occupied by complainants at the time of the Sheriff's levy and at the time of the execution and delivery of the Sheriff's deed, and that the Sheriff's sale is therefore champertous; 4th. The Sheriff's sale was invalid and void because written notice, as required by Section 27-703, T. C. A. was not served on either complainants or Fred Sterchi, Jr.; 5th. The rule of caveat emptor applies to all judicial sales, and the purchaser, the Archer Paper Company, was aware of complainants' adverse possession.

The cause was tried before Hon. M. B. Finkelstein, Chancellor of Part II of the Chancery Court of Hamilton

County, who on August 1, 1957 filed a memorandum opinion in which he decided the issues in favor of the defendant, the Archer Paper Company, and ordered complainants' bill dismissed. On August 16, 1957, complainants filed a petition to rehear which was taken under advisement by the Chancellor, and overruled in a memorandum opinion filed October 8, 1957. Both the Chancellor's original memorandum and his memorandum overruling the petition to rehear have been helpful to this court in deciding this cause. On September 9, 1957, a decree had been entered adjudging that the judgment lien of the defendant Archer Paper Company which attached to the land on January 21, 1954 was superior to the unregistered deed of the complainant, that the sale to the defendant, Archer Paper Company, was made pursuant to the judgment lien, that the rules of champerty and caveat emptor have no application to this cause, that notice of the impending execution of the sale was not required to be given, that the Archer Paper Company has a valid title under the Sheriff's deed of May 27, 1954, and ordering the dismissal of complainants' bill. On October 23, 1957, a final decree was entered overruling the petition to rehear and granting to complainant Marcella Hames an appeal. This decree provides, on application of complainant, and by agreement of the parties, that the technical and original record in the cause of Archer Paper Company vs. Fred W. Sterchi, Jr., No. 32333, in the Chancery Court of Hamilton County, Tennessee, as well as the two memorandum opinions of Chancellor Finkelstein, be incorporated in the record to be sent up on appeal.

As appellant, Mrs. Hames has filed in this court five assignments of error. It will not be necessary to copy

8

these assignments of error into this opinion. They present adequately the several contentions of complainant in the lower court, as state above. In our opinion, the determinative issue is whether the Archer Paper Company's title depends upon the lien created by its judgment against Fred W. Sterchi, Jr. recovered January 21, 1954, or on the lien established by the Sheriff's levy on February 23, 1954, between which two dates the Hames deed was recorded, viz., on February 10, 1954. We feel constrained to agree with the ruling of the learned Chancellor, and hold that appellee's title was acquired pursuant to the judgment lien of January 21, 1954, and is therefore superior to the title of appellant. The judgment lien and the execution lien are not inconsistent but cumulative. Each of them supplements the other.

The Code Section under the provisions of which the judgment lien of the Archer Paper Company attached is 25-501 T. C. A., which was Section 8043 of the Code of 1932 in force at the time of said judgment, January 21, 1954, and the time within which such lien must be enforced to be effective is provided for in Section 25-506 T. C. A. which was Section 8045 of the Code of 1932. The language of said Code Sections, as set out in the Code of 1932, is as follows:

"8043-4708-(2980). Lien on land.—Judgments and decrees obtained in any court of record of this state, in the county where the debtor resides at the time of rendition, shall be liens upon the debtor's land in that county from the time the same were rendered.

\* \* \* \* \* \*

"8045-4710-(2982). To be enforced in twelve months. —The lien thus given will be lost, unless an execu-

tion is taken out and the land sold within twelve months after the rendition of the judgment or decree.''

The Code Sections quoted above must, necessarily, be construed in connection with the statutes of Tennessee which provide for registration or recording of deeds and other instruments of title. The material portion of said recording statutes is now contained in Section 64-2603 T. C. A., which was, at the time material to this lawsuit, incorporated in Section 7668 of the 1950 Supplement to the Code of Tennessee. The material part of said Section 7668 of the 1950 Supplement to the Code is as follows:

"Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.''

The purpose of the above quoted Section of our Recording Statutes and its effect on land titles has been considered and construed in numerous cases decided by our appellate courts. A summary, which we quote from the opinion of the learned Chancellor, which in turn is quoted from the decision of our Supreme Court in Wright v. Black, 159 Tenn. 254, 260, 17 S. W. (2d) 917, 65 A. L. R. 357, is as follows:

"There are five leading positions embraced in the recording acts, to wit: (1) As between the parties and their heirs and representatives, such instruments take effect and are good without registration; (2) They take effect and are good as to all persons who have actual notice of them from the date of such

notice, except creditors; (3) As to creditors of the vendor only they are ineffective until registered; (4) As to all other persons they are ineffective until registered, and (5) When noted for registration they become effective and afford notice to all the world.''

As applied to the facts of the instant case, what is said in Wright v. Black, 159 Tenn. 254, 17 S. W. (2d) 917, 65 A. L. R. 357; must be considered as dictum, only; because, there, the decision was against the contention of the judgment creditor. In that case, one J. F. May had during his lifetime conveyed to F. M. Wright a tract of land in Lawrence County, the deed having been executed May 6, 1925. This deed, however, was not filed for record until March 31, 1927. In the meantime, on September 8, 1926, J. F. May had died. Prior to the death of J. F. May, the Farmers and Merchants Bank had recovered a judgment against one of his sons, B. F. May; and on September 28, 1926, shortly after the death of J. F. May, the bank procured an execution on its judgment and had same levied on the undivided interest of B. F. May as an heir of his father, which execution was levied on the land held by Wright under his unrecorded deed. Wright filed his bill in the Chancery Court seeking an injunction against the Sheriff and the bank to restrain further proceedings under the execution. The Supreme Court, in an opinion written by Mr. Chief Justice Green, reversed the denial of injunctive relief by the Chancellor, ruled that Section 2075 of the Code of 1858, which was carried forward into Section 7668 of the 1932 Code and the 1950 Supplement to same, and is now Section 64-2603 T. C. A., afforded no protection to the judgment creditor of an heir of the grantor under an unrecorded deed. There is a clear indication, however, that if the grantor had been

the judgment debtor instead of his son, the execution would have been good as against the grantee under the unrecorded deed.

Another case dealing with our Recording Statutes, which is cited in the Chancellor's memorandum opinion as controlling his decision in the instant case, is City National Bank & Trust Co. of Miami, Fla. v. City of Knoxville, 158 Tenn. 143, 11 S. W. (2d) 853. That case was before the court on a bill filed under the declaratory judgment law for advice as to the relative rights of a judgment creditor of one J. T. Toms and the City of Knoxville which was vendee under an unrecorded deed. The deed in question was executed May 13, 1918. On July 6, 1926, the bank loaned Toms $450.00, for which amount, on November 17, 1927, it recovered a judgment against him. The execution for collection of this judgment was levied on the land in question on April 13, 1928. It thus appeared that the City had been in adverse possession of the land in controversy for more than nine years. The decision was in favor of the City of Knoxville, on the ground that by reason of the statute of limitations of seven years, Section 4458, Shannon's Code, now carried forward into Section 28-203 T. C. A., the City of Knoxville had a good defensive title to the land in controversy, independent of the title conveyed to it by the unrecorded deed.

From the opinion of the Supreme Court, written by Mr. Chief Justice Green, we quote:

"But suppose, as to the bank, the deed herein is absolutely void and treated as nonexistent. Nevertheless the bank is profited little, if at all. The right of the city to hold this land does not depend on the

deed so long as its possession is maintained. The possessory right of the city is complete by reason of the statute without any deed at all. Until the possession of the city is surrendered, the right to possession of said lot is not remitted to the holder of the legal title. Hammett v. Blount, supra [1 Swan 385, 31 Tenn. 385]. The seizure of the legal title, therefore, under the execution, does not affect the present possession. Section 3752, Thompson's-Shannon's Code, (Sec. 7668, 1950 Code Supplement, —Sec. 64-2603, T.C.A.), relied on by the bank, does not reach the case before us.

"We accordingly attain the conclusion that the bank has no lien upon the land in question by reason of the judgment and levy of execution which takes priority over the city's possessory right to said land." City National Bank & Trust Co. of Miami, Fla. v. City of Knoxville, 158 Tenn. 143, 147, 11 S. W. (2d) 853, 854.

■ Able counsel for Mrs. Hames in the instant case, refers to the language in the Chancellor's opinion which says that the instant case is controlled by the decision in City National Bank & Trust Co. of Miami, Fla. v. City of Knoxville, 158 Tenn. 143, 11 S. W. (2d) 853, and asserts that the instant case, not only is not controlled by that decision, but that, applying the reasoning of that case to the facts of the instant case, Mrs. Hames was entitled to a decision in her favor. We cannot agree with that contention. Obviously counsel's reasoning is based on the holding of the Supreme Court that, by reason of its adverse possession, the City of Knoxville was entitled to prevail, notwithstanding the fact that it had failed to record its deed. Counsel for Mrs. Hames

contend that in the instant case, her adverse possession of the land here involved should entitle her to the same result. The fallacy of this contention lies in the fact that Mrs. Hames' adverse possession had been for a period of only four years, whereas that of the City of Knoxville had been for a period of nine years, or two years more than the minimum of seven years required by the applicable statute of limitations. The Chancellor found as a fact that Mr. and Mrs. Hames had been in possession of the disputed land, under authority of the unrecorded deed, and had had open, notorious and adverse possession of same for more than four years. If this adverse possession had been for as much as seven years, instead of for only a little more than four years, the Knoxville case would be controlling in favor of Mrs. Hames and she would be entitled to a decision in her favor on its authority.

The case, which on its facts is more nearly identical with the instant case than any case which we have found or which has been pointed out to us, is McCoy v. Hight, 162 Tenn. 507, 39 S. W. (2d) 271. The facts of that case were that on August 20, 1928, Mrs. Hight, by warranty deed, conveyed a house and lot near Shelbyville to Mr. and Mrs. Gammill. The recited consideration was $2500.00, $1900.00 of which sum was used to discharge a mortgage debt of that amount held by one Woodard, which amount was withheld and so used on August 25, 1928, thus clearing the title. Mr. and Mrs. Gammill did not, however, record their deed until September 1, 1928, and on August 27, 1928, McCoy, a creditor of Mrs. Hight, attached the property conveyed by her deed. By amended bill, Mr. and Mrs. Gammill were made parties to the suit and they filed a cross-bill by which they asked to be

subrogated to the mortgage of Woodard, since $1900.00 of the consideration paid by them was applied in discharging his debt. The Chancellor entered a decree in favor of complainant McCoy against Mrs. Hight for $1265.00, sustained the attachment, dismissed the cross-bill and ordered the house and lot sold in satisfaction of the decree. Upon appeal, the Court of Appeals affirmed the Chancellor except as to the cross-bill which was sustained, and the Gammills were decreed to have a first lien on the property to the extent of $1900.00. The case was removed by certiorari to the Supreme Court, which reversed the Court of Appeals and sustained the Chancellor. From the Supreme Court's opinion, written by Mr. Justice McKinney, we quote, as follows:

"Under our registration laws a deed is not effectual against creditors, even with actual notice of an unregistered instrument, until placed on record. Lookout Bank v. Noe, 86 Tenn. [21] 29, 5 S. W. 433; Wilkins v. McCorkle, 112 Tenn. 688, 80 S. W. 834; City Nat. Bank & Trust Co. of Miami v. [City of] Knoxville, 158 Tenn. [143] 147, 11 S. W. (2d) 853.

"These decisions are based upon section 3752 of Shannon's Code, (Section 7668, Code of 1932 and 1950 Supplement,—Section 64-2603 T. C. A.), which is as follows: 'Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice, and, in case of marriage contracts, shall be void as to existing or subsequent creditors of the husband, or purchasers from him without notice.'

"To grant cross-complainants the relief which they seek would be to ignore and violate this statute. The mere fact that Mrs. Hight, out of the proceeds of sale, discharged an existing lien, does not in any wise alter the situation. The cause in its final analysis is one where the purchasers paid for and acquired good title to the lot, but, by neglecting to record their deed, made it possible for a creditor of their vendor to fasten a lien upon it. In these circumstances the statute provides that the attaching creditor has a superior claim to the land." McCoy v. Hight, 162 Tenn. 507, 509-510, 39 S. W. (2d) 271, 272.

In our opinion, the above quoted language and the decision of the Supreme Court in McCoy v. Hight, is conclusive of the instant case.

██ The judgment lien created by Section 25-501 T. C.A., which was the same as Section 8043 Code of 1932, is a general lien which is lost only by failure to comply, within twelve months with the provisions of Section 25-506 T.C.A., which was Section 8045 in the Code of 1932, whereas the lien created by a levy of execution on land is a specific lien, independent of the judgment lien. The lien established by levy of execution is effective from the date of the execution, and is effective from that date until it becomes functus officio, that is, the date to which same is returnable. See Anderson v. Taylor, 1 Tenn. Ch. 436; Anderson v. Taylor, 74 Tenn. 382; Miller's Lessee v. Estill, 16 Tenn. 452; and Union Bank v. McClung, 28 Tenn. 91. In the instant case, the title of the Archer Paper Company depends upon the general lien of its judgment against Fred W. Sterchi, Jr., on January 21, 1954, coupled with the fact that it obtained execution thereon, and that the execution sale and delivery of the

Sheriff's deed pursuant thereto, and the recording thereof, all occurred within twelve months from the date of said judgment.

We are cited by able counsel for the appellant, Mrs. Hames, in the instant case, to the decision of the Supreme Court in the case of Southern Mortgage Guaranty Corp. v. King, 168 Tenn. 309, 77 S. W. (2d) 810, coupled with the observation that the case at bar is nearly identical with that case. We cannot agree with this contention of counsel. In the Southern Mortgage Guaranty Corp. case, a decree had been entered against the Kingwood Estates, Inc. October 27, 1932, and on September 18, 1933, an execution was issued thereunder and levied upon land in Hamilton County as the property of Kingwood Estates. The sale under the execution followed on October 20, 1933 with the Sheriff's deed delivered the same day, which was registered on November 1, 1933. The land levied on had been conveyed by Kingwood Estates to Burl S. Groover and wife July 17, 1930, but their deed to same was not registered until February 28, 1933, which was four months after the entry of the decree against Kingwood Estates. The decision of the Supreme Court was in favor of the Groovers because it appeared that the decree against the Kingwood Estates, Inc., on which the lien depended, although entered October 27, 1932, which was less than twelve months prior to the execution sale, had at that time been entered nunc pro tunc as of October 3, 1932, which was more than twelve months prior to the date of the execution sale on October 20, 1933. It resulted, therefore, that the judgment lien was thereby lost and that the recorded deed to the Groovers prevailed over the execution sale held more than twelve months after the effective date of the judgment pursuant to which

execution had been levied. In the instant case, the levy of execution, the execution sale, and the delivery and recording of the Sheriff's deed, all occurred and were completed within twelve months from the date of the Archer Paper Company's judgment or decree against Fred W. Sterchi, Jr., on January 21, 1954. The Supreme Court's decision in the Southern Mortgage Guaranty Corp. case is therefore wholly inapplicable to the facts of the instant case.

■ With reference to appellant's contention that the execution levy involved in the instant case was on several different lots, and therefore void, we think such contention is not maintainable. It is true the levy was on several different lots, some in one subdivision and that involved in the instant case in a separate subdivision; but the order of sale entered in the case of Archer Paper Company v. Fred W. Sterchi, Jr., cause No. 32333, entered March 1, 1954, shows that the Sheriff was directed to sell, "As the law directs", and the Sheriff's return showed:

"No bids received on Lot 31, 32, 33 and 34 of Fred Sterchi Subdivision; therefore, I report no sale on the above lots. One bid in the amount of ELEVEN HUNDRED ($1100.00) DOLLARS was made by Archer Paper Company for Lot 37, Block A, Robin Sterchi Subdivision, and the said Archer Paper Company, being the highest and best bidder, became the purchaser of said Lot 37, Block A, Robin Sterchi Subdivision, they having paid to me the amount of their bid."

■ Where several tracts of land are levied on and sold in gross, such sale is voidable, though not necessarily

void, as a fraud against the judgment debtor. The invalidity of such levy and sale therefore depends on the sale in gross, rather than on the levy in gross. In the instant case, it clearly appears that the lots levied on were sold separately, and, consequently, that no legal injury was done either to Fred W. Sterchi, Jr. or Mrs. Hames. The evil to be avoided is improper sacrifice of the judgment debtor's property. Such irregularity, even if it had occurred, could have been waived by Fred W. Sterchi, Jr., the judgment debtor here involved, who is not a party to this suit. See Winters and Cross v. Heirs of Burford, 46 Tenn. 328. We think, therefore, that this objection is without merit.

With reference to appellants' contention that the execution sale involved in this cause, is void because the land sold was, at the time of such sale, adversely held by Mr. and Mrs. Hames,—that contention, likewise, in our opinion, is wholly without merit. This contention is based upon our champerty statute contained in Sections 64-401 to 64-410 T. C. A., with particular reference to Section 64-410 which was Section 7827 of the Code of 1932, and which is as follows:

"If any person sell any lands or tenements, not having possession of them by himself, agent, or tenant, the same being adversely held by color of title, champerty shall be presumed until the purchaser show that such sale was bona fide made."

The law is settled in Tennessee that the champerty statutes do not apply to execution sales. Park's Lessee v. Larkin, 1805, 1 Tenn. 101; Kelly v. Morgan's Lessee, 1832, 11 Tenn. 437; Sims' Lessee v. Cross, 1837, 18

Tenn. 460; Todd v. Cannon, 1847, 27 Tenn. 512; McClain v. Easly, 1874, 63 Tenn. 520.

With reference to appellants' contention that the execution sale involved in the instant case was void because of the Sheriff's failure to serve either Fred W. Sterchi, Jr., or Mr. and Mrs. Hames with twenty days written notice previous to such sale, as required by Section 26-703 T. C. A., which was Section 8900 of the 1932 Code, we think this objection is also without merit. Such notice is required only where the judgment defendant is in actual possession of the tract of land sold, and occupying same at the time of sale. Farquhar v. Toney, 24 Tenn. 502; Prater v. M c D o n o u g h , 75 Tenn. 670; Christian v. Mynatt, 79 Tenn. 615. In Farquhar v. Toney, 24 Tenn. 502, the defendant resided on one tract and had two other tracts adjoining, all held by separate deeds, and they were all levied on and sold as one tract without giving him the required notice. In that case, the sale was held to be void as to the tract upon which the judgment debtor resided, but valid as to the other tracts thus sold without the twenty days notice. In the instant case, neither Fred W. Sterchi, Jr., nor Mr. or Mrs. Hames ever resided on the land here involved. Mr. and Mrs. Hames used the land in question as a horse lot and had a barn thereon. In any event, execution sale of land, without the twenty days notice, to a defendant in possession, is voidable, only. Trott v. McGavock, 9 Tenn. 469; Rogers v. Jennings' Lessee, 11 Tenn. 308; Loyd v. Anglin's Lessee, 15 Tenn. 428; Mitchell v. Lipe, 16 Tenn. 179, 29 Am. Dec. 116; Jones v. Planters' Bank, 22 Tenn. 76; Farquhar v. Toney, 24 Tenn. 502; Helms v. Alexander, 29 Tenn. 44; White v. Chesnut's Lessee, 30 Tenn. 79; Lafferty v. Conn,

35 Tenn. 221; Henry v. Keys, 37 Tenn. 488; Shannon v. Erwin, 58 Tenn. 337; Anderson v. Lyons, 2 Tenn. Ch. 61; Prater v. McDonough, 75 Tenn. 670; Ryther v. Blackwell, 113 Tenn. 182, 87 S. W. 260. If the notice required by this Code Section had been necessary, which we hold it was not, such notice should have been given to Sterchi and not to Mr. and Mrs. Hames. In that situation, if the sale were voidable, it would have had to be voided at the instigation of Fred W. Sterchi, Jr., who could waive the irregularity; and neither Mr. nor Mrs. Hames can be heard to say that the execution sale in question was invalid because of failure to give such notice to Sterchi.

The contention of appellant that the maxim caveat emptor applied to the execution sale involved in this cause, and that the purchaser at such sale was therefore charged with notice of adverse possession by Mr. and Mrs. Hames of the land being sold is merely a reiteration, asserted from a different point of approach, of their contention that the sale here involved was champertous. As stated above, judicial sales do not fall within the purview of champerty statutes, and, consequently, the rule of caveat emptor is not applicable. American Jurisprudence states the rule as follows:

"A judicial sale or sale made under an order or decree of a court of competent jurisdiction does not come within the operation of the statutes or rule that the alienation of land held adversely by a third person is champertous and therefore void, and such judicial sale is valid to pass the title held by the claimant to the purchaser thereat. 10 Am.Jur.— Champerty and Maintenance, Sec. 22, page 568."

To the same effect, it is expressly so provided by statute in Tennessee. Section 64-409 T. C. A., which was Section 7826 of the 1932 Code, is as follows:

"These provisions shall not prevent an absolute and bona fide sale or mortgage of lands or tenements not possessed and held adversely at the time of such sale or mortgage; nor a sale by execution, nor a sale and conveyance by a nonresident of this state, of lands which said nonresident may own, and of which lands no person, at the time of such sale, holds adverse possession by deed, devise, or inheritance."

See also Kelly v. Morgan's Lessee, 11 Tenn. 437 and Sims' Lessee v. Cross, 18 Tenn. 460, which hold that judicial sales are not Champertous.

There is another contention made by able counsel for appellants in this cause which is not expressly covered by any of the five assignments of error, viz., that "The judgment lien does not attach where a judgment debtor is the mere conduit or channel for the transmission of title." For this proposition, they cite Gordon v. Cox, 110 Tenn. 306, 75 S. W. 925; Huffaker v. Bowman, 36 Tenn. 89; and Gregg v. Jones, 52 Tenn. 443. Without questioning the soundness of this rule of law, nor the correctness of the decisions cited in support of same, we think it is wholly inapplicable to the facts of the case at bar. Nothing in the record before us indicates that Fred W. Sterchi, Jr., was merely a conduit through which Mr. and Mrs. Hames acquired title to the land here involved. The record shows that this land was formerly owned by Robin Sterchi and his wife, Juanita Sterchi. It was conveyed to Fred Sterchi by deed dated September 20, 1947 which was recorded October 9, 1951. The deed from

Fred Sterchi, Jr., to A. C. Hames, Trustee is dated October 8, 1951 and acknowledged on October 10, 1951; which deed in turn was not recorded until February 10, 1954.

After careful consideration of the entire record in this cause, together with the briefs and arguments of counsel, we have reached the conclusion that the carelessness of Mr. and Mrs. Hames in failing to record their deed until February 10, 1954, is alone responsible for the situation which resulted in the Archer Paper Company having acquired, on January 21, 1954, a judgment lien which resulted in conveyance of a title to it superior to that held by Mr. and Mrs. Hames under their unrecorded deed. One of the purposes of our recording statutes is to protect judgment creditors, in exactly that situation. We, therefore, have no alternative other than to affirm the decree of the Chancellor which sustained the superiority of the Archer Paper Company's title. It follows that all of appellants' assignments of error must be overruled, and the decree of the Chancery Court of Hamilton County, Tennessee dismissing complainants' bill, affirmed. A decree so adjudging may be entered here. The costs of the cause will be adjudged against complainants and their sureties on the cost bond in the lower court and the appeal bond in this court.

Avery, P. J. (Western Section), and Carney, J., concur.