MARY D. MOORE *v.* J. H. DINNING *et al.*

WOOTEN MOORE *v.* J. H. DINNING *et al.*

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY *v.* E. M. SEWELL, ADMINISTRATOR *et al.*

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY *v.* J. H. DINNING *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed February 23, 1929.

HORACE FRIERSON, JR. and W. S. FLEMING, SR., for appellants, Lockeridge.

WEBSTER & WEBSTER and NEWMAN BRANDON, for appellees, Moore.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In September, 1918, Dinning sold to W. T. and James Lockeridge a tract of one hundred twenty-nine acres of land in Maury County and executed to them a bond for title, taking from the vendees purchase money lien notes, which were additionally secured by the execution of a mortgage on an independent tract of land. The vendees entered into occupancy of the lands and continued in such occupancy and possession, maintaining fences about the tract, and dwelling on and cultivating the greater part thereof, up to the filing of the bills in these causes on June 21, 1926.

After making this sale to these Lockeridge brothers, Dinning borrowed money of the Northwestern Insurance Company and, in October, 1920, executed and had regis-

tered a mortgage to secure his loan on several tracts of land in Maury County, and included therein the tract he had sold to the Lockeridge brothers. Their bond for title had not been registered, but in view of their possession at the time, apparently as an assurance against adverse claims on their part, Dinning delivered to the Northwestern Company an informal writing purporting to evidence that the occupancy of the Lockeridge brothers was as tenants only.

Later, in the early part of the year, 1921, Dinning executed and delivered to the Lockeridge brothers deeds conveying to each of them approximately one-half of the original tract then held by them under the joint title bond.

Thus, the matter stood until 1926, when complainants Moore, having obtained judgments against Dinning and *nulla bona* returns, filed their bill seeking to subject to the satisfaction of their judgments the equities of Dinning in all the lands mortgaged by him to Northwestern Insurance Company, subject only to the claims of the Insurance Company. All parties conceded the prior right of the Insurance Company, but, while neither their bond for title, nor their deeds had been recorded, W. T. Lockeridge for himself, and the children of his brother James, deceased, through their guardian *ad litem,* set up their continuous adverse possession for more than seven years and relied on the statute, Shannon's Code, 4458, reading as follows: "No person, or any one claiming under him, shall have any action, either at law or equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."

The Chancellor gave the complainants, as judgment creditors of Dinning, a decree against the Lockeridge lands, subject alone to the rights of the Insurance Com-

pany, holding the unregistered bond for title and deeds void as against complainants. It further appears that, prior to the filing of complainants' bill, Dinning had sold and transferred to Mrs. Mary E. Blackburn, before maturity, the Lockeridge notes, aggregating some $11,500. She being before the Court, the Chancellor decreed that the lien of her notes, secured by the unregistered deeds, was subject to the claim of complainants.

The Court of Appeals, although expressly finding that the Lockeridge brothers "went into possession and actual occupancy of said property on January 1, 1919, and have remained in the actual possession ever since," held that the possession of these vendees, holding under bond for title, was not adverse to their vendor Dinning, or to Dinning's judgment creditors. The Court held applicable to a vendor and his creditors the same principle which applies to mortgagors and mortgagees, that is, that adverse possession by a mortgagor will not defeat the mortgagee's rights. While recognizing that where the purchaser "is in possession under a deed purporting to convey an absolute title to the land, he will be considered as holding adversely to the grantor," citing authorities, the Court says:

"But where one enters and holds possession under an executory contract of purchase (*Knox* v. *Thomas,* 5 Humph., 572) or bond for title, the entry and possession are in subordination to the vendor, and such a privity exists which precludes the idea of a hostile possession pending the completion of the contract, which could silently ripen into title by adverse possession under the Statute of Limitations. Such possession retains its subordinate character until payment or until the vendee has distinctly and unequivocally repudiated the title of his

vendor and has given the vendor notice to this effect. 2 C. J., 151, secs. 268-269; *Gudger* v. *Barnes,* 4 Heisk., 570; Shannon's New 1917 Code, sec. 4461 and note 5.

"In this case there is no pretense that the Lockeridges gave notice to the Northwestern Mutual Life Insurance Company, Dinning or to his creditors that they were holding adversely to them, and the question of registration of the title bond and deeds can therefore have no effect on the proposition."

That Court thereupon affirmed the Chancellor and ordered sale of the land for the satisfaction of complainants' judgment debts against Dinning.

The correctness of this decree is challenged by the petition for *certiorari* which has been granted and the cause heard. While in argument it was said that the Lockeridges had abandoned their bond for title by execution of the waiver to the Northwestern Insurance Company, and that the lower Courts had so found, and had found that there had been no adverse possession, we do not so read the findings of the Court of Appeals, but to the contrary.

*(1)* The case before us presents but one question and that one of law: Is the possession of lands by a vendee, holding under a *bond for title,* pending payment of the balance purchase money, adverse to that of his vendor? We are unable to agree with the learned Court of Appeals in holding that such a possession is "in subordination to the vendor," and that, on the theory of an existing privity, "such possession retains its subordinate character until payment, or until the vendee has distinctly and unequivocally repudiated the title of his vendor and has given the vendor notice to this effect," *except* insofar as the lien of the vendor for balance purchase

money is concerned, and his right to enforce this lien against the land.

The Court of Appeals cites 2 C. J., p. 151, secs. 268-269, from which the language employed has been substantially taken; also *Knox* v. *Thomas,* 5 Humph., 572; *Gudger* v. *Barnes,* 4 Heisk., 570 and Section 4461 of Shannon's Code. The two Tennessee cases, *supra,* are those cited from this State by Corpus Juris to sustain the text.

*(2)* A careful review of the decisions in this State fails to sustain the distinction taken by the learned Court of Appeals between the effect of the possession of a vendee holding under a deed and one holding under a bond for title. The first headnote to *Gudger* v. *Barnes, supra,* reads as follows: "The possession of a purchaser of land by title bond is not adverse to the claim of the vendor *to a lien* on the land for his purchase money." We italicize the distinguishing words, the force of which has been perhaps overlooked by the author of Corpus Juris and by the learned Court of Appeals, for an examination of the opinion in that case shows that the Court, while holding that the possession of the vendee under a title bond is "not adverse to the lien or right contracted for the vendor," overruling *Ray* v. *Goodman,* 1 Sneed, 586, on this point, quite emphatically declared that "so far as the possession of the land under the title bond goes, it is a possession for himself (the vendee), and adverse to the right of possession of the vendor, so that, if such vendee shall hold possession under the title bond, and purchase evidenced by it, seven years, he would be protected against any possessory action, or action in law or equity on the part of the vendor," and therefore of the vendor's creditors, "in which the vendor should seek to oust him of his possession and obtain it for himself."

The Court cites *James* v. *Lessee,* 1 Swan, 310, and *Vance's Heirs* v. *Johnson,* 10 Humph., 220.

And, in *Moore* v. *Knight,* 6 Lea, 428, 437, the Court strongly reaffirms this position. This was again a case of a *title-bond* vendee, and after distinguishing this situation from that of a mortgagee, the Court says that, "He holds, as held by this Court in several cases, for himself and adverse to the vendor. So that if he continues in possession for seven years, this gives him a possessor's right that may be set up against his vendor seeking to obtain possession of the land, armed with the legal title." *Gudger* v. *Barnes, supra,* is referred to and approved. And the Court goes on to show that "even a purchaser by verbal contract is not a tenant in such sense as to estop him from denying the title or right of his vendor, and if permitted to hold adversely or under the contract for seven years, will get the benefit of the Statutes of Limitation in favor of his possessory right." Says the Court, "the truth is, that the relations of the parties are simply that of vendor and vendee—the former retaining the legal title to secure the payment of his debt, the latter entitled to occupancy and enjoy possession of the land for himself by the fairly understood terms of the contract."

In *Ellege* v. *Cooke,* 5 Lea, 622, the Court, speaking through McFarland, J., went even farther and held that the possession of a purchaser of land by title bond who goes into possession and holds for himself is so far adverse to that of his vendor, that his possession is not that of his vendor so as to perfect the title of the vendor who has color of title, under the 1st section of the Act of 1819. We find no holding of our Court to the contrary of that elaborated in *Gudger* v. *Barnes* and *Moore* v. *Knight, supra,* and in principle recognized in other decisions.

The Court of Appeals cites Shannon's Code, Section 4461, providing that, "possession is not adverse within the meaning of this article, as to any person claiming a right or interest in the land, when taken and continued under a title-bond, mortgage or other instrument acknowledging that right or interest, or when taken in subordination to the right or interest of another."

We agree with the view expressed by Mr. Shannon, in his note 1 under this section, that "this statute was only intended to enact that the possession of the purchaser shall not be adverse to the claim of the vendor's purchase money." An in his notes 10 and 12 under Section 4458, Mr. Shannon cites numerous cases for the general proposition that (1) the vendee's possession is not for the vendor, but for himself and adverse to the vendor, "whether the contract of sale be in writing or parol, valid or invalid;" and that (2) the "vendee's possession under title bond, for seven years, protects him against possessory action of vendor."

In the instant case the vendees under title bond had held possession for seven years and the complainants acquired no lien upon the land in question by reason of their judgments against Dinning and the filing of their bill which takes priority over the defendant Lockeridge's possessory right to the land. See *Bank & Trust Co.* v. *Knoxville,* 11 S. W. (2nd), page 853.

The suggestion is made in argument that decrees should be awarded for complainants subjecting the lien for purchase money of the vendor, which the seven-year statute does not bar, but if conceded that the frame of the bills and the prayers are sufficient for such relief, it appears clearly, as before mentioned, that the purchase money notes had been transferred before maturity,

and before the filing of these bills, to an innocent holder for value and the vendor's lien so passed.

It results that no relief can be granted under complainant's bills, and the decree must be reversed with costs against complainants.