HILLSBOROUGH INVESTMENT COMPANY, a Florida corporation v. LAWYERS TRUST COMPANY, a corporation, *et al.*

3 Sou. (2nd) 870

Division B

Opinion Filed September 26, 1941

Rehearing Denied October 16, 1941

*Paul Game,* for Petitioner;

*J. B. Norman* and *William M. Taliaferro,* for Respondents.

THOMAS, J.—It is the purpose of the application for certiorari to obtain a review of the order of the chancellor denying the motion to dismiss a bill of complaint brought to remove as clouds upon title various claims of numerous defendants.

The plaintiffs, who become respondents here, are the administrators of the will of William B. Armstrong, deceased, and one of the defendants, Hillsborough Investment Company, now petitioner, is the holder of judgments against Frank Bentley, Sr. and C. C. Nott. In order that the significance of these names may be more apparent we will refer at this time to the deraignment of the chain of title as it appeared in the bill.

In 1923, one Andrew J. Knight and his wife conveyed the property involved to Bentley as trustee for Nott and others. The trustee, joined by his wife, deeded it and other conveyances followed, the grantee in the last one executing a mortgage which was foreclosed, resulting in a master's sale to Armstrong. There are allegations in the initial pleading giving explicitly the details of adverse possession by Armstrong beginning immediately after execution of the master's deed and lasting continuously until the grantee's death and by his personal representatives thereafter without interruption.

The particular deed brought into question is the one from the trustee and his wife and it is charged in the bill that because of its form suspicion is cast upon the title and sales of the property have been frustrated.

This instrument beclouds the title, so it is charged, because it is sometimes pretended that certain interests or rights of the trustee Bentley and the *cestui que trustent* were not conveyed and are still outstanding. Petitioner is therefore a party to the litigation because of the effect of its judgments on any unconveyed title.

It is not necessary for us to pass on the claims or interests of the various defendants, other than that of the petitioner, and the only matter he presents with which we consider it necessary to deal is the comparative efficacy of the adverse possession of Armstrong and his personal representatives extending over a period of ten years, from 1929, and lien of the petitioner's judgments which were entered in 1931. It is evidently the position of the petitioner that respondents could not have "acquired any vested right or title

to the interests of the judgment debtor" until the full period of seven years of adverse possession had passed and that the judgment was therefore unaffected by that possession regardless of the fact, which was by the averments offered to be proved, that the possession began before the lien of the judgment attached.

Parenthetically, inasmuch as no pleading is before us except the plaintiffs' we are, of course, not advised whether any effort was made on the part of the judgment holder to enforce his claim within the seven year period.

It is our view that if the allegations of the bill are proved the petitioner became the lienee under the judgment with notice of possession by the grantee Armstrong (Carolina Portland Cement Company v. Roper, *et al.,* 68 Fla. 299, 67 So. 115) so notorious, exclusive, open and continuous as to be truly adverse.

It is patent that it would be illogical to hold that the effect of the adverse possession was halted by the recordation of the judgment and that adverse possession would be ineffectual unless the full period of seven years had run before such judgment became a lien. The holder of the judgment having, by reason of the adverse possession, been placed on notice of a hostile claim could have protected his rights and defeated the adverse possessor by enforcing the collection of the judgment against the property by levy of execution [but he could not remain passive while claim developed into a right and invoke enforcement at his pleasure any time during the period of twenty years allowed by law. If inertia on his part persisted for more than seven years during which time the adverse possession had ripened into title he must suffer the consequences.

The day the judgment was entered the judgment creditor was placed on notice of the adverse claim and that notice affected him and his assignees thereafter. If, despite this situation, none of them made an attempt to counteract the unfriendly interest by enforcing the lien by levy and the adverse possession matured then the right of the grantee Armstrong and his successors became superior to the lien of the judgment.]

It seems to us that to hold, as the petitioner would have us, would render the rule announced in the above cited case, *id est*: "actual possession of land is such notice to all the world or to any one having knowledge of such possession as will put upon inquiry those acquiring title to or a lien on the land to ascertain the nature of the rights the occupant really has in the premises," utterly meaningless. If such were the ruling the very right required to be noticed by the subsequent purchaser or judgment creditor would cease when the notice of it became effective by the subsequent transfer or lien. It would be at once recognized and ignored. The right, of which notice must be taken, is the inception of title by adverse possession which, if not interrupted by one who has himself the power to interrupt, will by the passing of time develop into a superior claim. In such case the one who procrastinates becomes the victim of his own neglect.

The chancellor properly denied the motion to dismiss the bill of complaint so the petition for certiorari is denied.

BROWN, C. J., TERRELL and CHAPMAN, J. J., concur.