In re Joe Bob **EASTERLY** and Edna Helen Easterly, Debtors.

William L. **LANCASTER**, III, Trustee in Bankruptcy, Plaintiff,

v.

Charlie J. **KEY** and Robbie L. Key, Defendants.

Bankruptcy No. 3–80–00901.
Adv. No. 3–80–0502.

United States Bankruptcy Court, D. Tennessee.

Jan. 15, 1982.

Ferdinand Powell, Jr., Johnson City, Tenn., for plaintiff.

H. R. Silvers, Greenville, Tenn., for defendants.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

The defendants in this adversary proceeding, on August 17, 1979, purchased real property from the debtors. Defendants failed to record their deed, however, until August 29, 1980, some one and one-half months after the debtors filed a bankruptcy petition. 11 U.S.C. § 302. The trustee now asserts, as of the date of bankruptcy, legal

title and lien creditor status superior to the rights of defendants. 11 U.S.C. § 544. The pertinent facts are not in dispute and may be summarized.

### I

Defendants are husband and wife, having been married for a number of years. In the summer of 1979 they were made aware through Martha Compton of Saulsbury Realty Company, agent for the debtors, that the Joe Bob Easterly property, consisting of a house and lot in the 10th Civil District of Greene County, Tennessee (Lot No. 11, Hickory Hill Estates), was for sale. They decided to buy this property for use as a residence and on July 28, 1979, signed a contract to purchase the property for the sum of $67,000 cash. On the same day they made a down payment of $25,000.

On August 17, 1979, they received a warranty deed to the property duly executed by the debtors. Simultaneously they delivered their check for the remaining $42,000 to Saulsbury Realty Company. On August 22, 1979, they moved into the residence and have lived in the property at all times since then. They did not record their warranty deed until August 29, 1980, shortly after receiving an inquiry from Mr. Ferdinand Powell, Jr., attorney for the trustee of the debtors, who filed a petition under Chapter 7 of Title 11 of the United States Code on July 7, 1980.[1]

### II

The trustee relies upon § 544 of the Bankruptcy Code. 11 U.S.C. § 544(a) enacts:

"§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

---

1. Mr. Powell, on August 27, 1980, advised the defendants by letter that no deed could be found of record from the debtors to them in the

Register's Office for Greene County, Tennessee. Immediately thereafter the defendants recorded their deed.

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists."

The trustee insists that Tennessee law is clear on the method by which the transfer of real property from the debtors to the defendants must be perfected. Tennessee Code Annotated § 64–2401(4) states:

"64–2401. Writings eligible for registration.—The following writings may be registered:

.    .    .    .    .

"(4) All deeds for absolute conveyance of any lands, tenements or hereditaments, or any estate therein."

The effects of registering a deed of conveyance are found in T.C.A. § 64–2601 and T.C.A. § 64–2602, which state:

"64–2601. Effect of instruments with or without registration.—All of the instruments mentioned in § 64–2401 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided."

"64–2602. Notice to all the world.—All of said instruments so registered shall be notice to all the world from the time they are noted for registration, as prescribed in § 8–1308; and shall take effect from said time."

Also, according to the trustee, Tennessee law is quite clear on the effect of an unregistered deed of conveyance as to a creditors and bona fide purchasers without notice. T.C.A. § 64–2603 states:

"64–2603. Unregistered instruments void as to creditors and bona fide purchasers.—Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." (See also T.C.A. § 64–504).

Defendants raise various defenses to the trustee's cause of action. Defendants insist that they bought and paid for the property prior to the filing of the petition in bankruptcy; further, that they occupied the premises "open and notoriously" and were in possession of the premises when the petition was filed. Although they concede they did not record their deed to the property until after the bankruptcy petition was filed, they deny that the trustee acquired any power as a "bona fide purchaser" or any "judgment lien creditor status" that is superior to their rights in the property. Defendants further insist that, even if the trustee became a bona fide purchaser or a judgment lien creditor as to the property involved, the trustee's rights were cut off on August 29, 1980, when the defendants recorded their deed prior to the trustee's filing of a lis pendens on September 15, 1980. Defendants also assert that the debtors at the commencement of the case did not hold "legal title" to the property in question but only "apparent legal title" and that the trustee under Sec. 541 could not acquire a greater interest. "(T)he 'recovery' provisions—Sections 543, 550, 553, 723 (and by implication, 544)—are not designed to extend the bankruptcy estate beyond the parameters of Sec. 541, but simply to enable

the full realization of the estate as there defined." Defendant's Supplemental Brief, p. 6.

### III

"It was said [of Sec. 70(c) of the former Bankruptcy Act] that it conferred upon the trustee 'by force of law' the status of 'the ideal creditor', irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or equitable proceedings." 4, Collier on Bankruptcy, 15th Ed., ¶ 544.02.

"If the description of the trustee's position under former Section 70c was apt, it is even more so under the broader language of section 544(a). It is evident that this hypothetical status depends for meaning upon a substantive law that is not explicitly indicated but that is incorporated by reference. Therefore, the trustee's powers, in every case governed by section 544(a), are those which the state law would allow to a supposed or hypothetical creditor of the debtor who, as of the commencement of the case, had completed the legal (or equitable) processes for perfection of a lien upon all the property available for the satisfaction of his claim against the debtor." *Id.*

Thus, § 544(a) gives the trustee the status and powers of a judicial lien creditor, a creditor holding an execution returned unsatisfied, and a bona fide purchaser of real property from the debtor, "as of the commencement of the case, and without regard to any knowledge of the trustee, or of any creditor." 11 U.S.C. § 544(a).

Turning now to the law of this state, more than a hundred years ago a Tennessee court was asked to determine the rights of levying creditors against one holding under an unrecorded deed. *Birdwell v. Cain*, 41 Tenn. 301 (1860). In that case it appears that on July 16, 1853, John Cain made a bona fide conveyance by trust deed to Brittain Phillips, but the conveyance was not registered until July 18, 1854. In the meantime on November 23, 1853, a judgment was rendered in favor of Birdwell and Osborne against Cain. Execution was issued thereon and levied upon the land, before the registration of the conveyance. The levy and sale thereunder were held superior to the deed, because of the want of registration.

*Birdwell v. Cain*, supra, was cited and followed in *Malone v. Brown*, 46 S.W. 1004 (Tenn.Ch.App.1897) (aff'd orally by Sup.Ct. Dec. 16, 1897). The court was called upon to construe Shannon's Code § 3752 which provided "that any of said instruments [deeds for the absolute conveyance of real estate] not so ... registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." The court held that, when a deed to land is not registered, the land is subject to levy under an execution issued on a judgment against the grantor for a debt contracted subsequent to the conveyance, although the creditor knew of the conveyance when the debt was contracted.

In Tennessee, it thus seems clear that land held by an unregistered deed may be levied upon by execution and attaching creditors of the vendor. "As to the execution and attaching creditors of the maker, a deed is null and void for lack of registration." *Bryant v. Bank of Charleston*, 107 Tenn. 560, 64 S.W. 895, 896 (1901). An unregistered deed is void as against creditors of the vendor, notwithstanding the fact that they became creditors subsequent to such deed. "Most courts do not go so far in the construction of recording statutes similar to ours." *City National Bank & Trust Co. of Miami, Fla. v. City of Knoxville*, 158 Tenn. 143, 11 S.W.2d 853, 854 (1928).

"The effect of sec. 3752 of Shannon's Code (now T.C.A. 64–2603) is to be settled by the decisions of the Tennessee Supreme Court. Their construction is controlling. The purposes of the statute are obvious, and the penalty imposed for its nonobservance is harsh. Such unrecorded conveyances, at least insofar as they affect the rights of creditors, are void." *In re Sweat*, Bankruptcy No. 4660 (E.D. Tenn.1930).

It follows that, unless a different rule of law applies, the rights of the Trustee would be superior to the rights of the Keys.

In *City National Bank and Trust Co. of Miami, Florida v. City of Knoxville*, 158 Tenn. 143, 11 S.W.2d 853 (1928), the court was faced with the following facts.

On May 13, 1918, in consideration of $1800.00 one J. T. Toms conveyed to the City of Knoxville a lot located in that city. The City took possession immediately, fenced the lot, and held it adversely under enclosure. By inadvertence, however, the deed from Toms to the City was not recorded.

On July 6, 1926, the City National Bank & Trust loaned Toms $450.00 and, when the loan was not repaid, obtained a judgment against him on November 17, 1927. On April 13, 1928, the Bank caused a levy to be made on the lot in question as the property of Toms. The City, asserting superior title, relied upon § 4458 of Shannon's Code as follows:

> "No person, or anyone claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."

The Bank cited the registration laws of Tennessee, Shannon's Code § 3752, which provided that an unregistered deed was null and void as against creditors of the vendor, regardless of whether they were existing or subsequent creditors and had actual knowledge thereof.

The court held that the right of the City to hold the land did not depend on the deed so long as its possession was maintained. "The possessory right of the city is complete by reason of .the statute [§ 4458] without any deed at all. Until the possession of the city is surrendered, the right to possession of said lot is not remitted to the holder of the legal title . . . Section 3752, Thompson's

Shannon's Code, relied on by the bank, does not reach the case before us." The court concluded that the Bank had no lien upon the land in question by reason of the judgment and levy of execution which took priority over the City's possessory right to the land.[2]

In 1958, the case of *Hames v. Archer Paper Company*, 45 Tenn.App. 1, 319 S.W.2d 252, came before the Court of Appeals. The land involved in that case, a tract of slightly less than one acre, was conveyed under deed of October 10, 1951, by Fred Sterchi, Jr., and his wife, to A. C. Hames, Trustee, but the deed was not recorded until February 10, 1954. In the meantime, on January 21, 1954, Archer Paper Company obtained a judgment in the Chancery Court of Hamilton County, Tennessee, against Sterchi in the amount of $1,660.12, which was duly enrolled on the same date in the records of the Chancery Court of Hamilton County. An execution was issued and a levy made on the land involved on February 23, 1954. On April 10, 1954, the land was sold by the Sheriff to Archer Paper Company for $1100.00. The Sheriff's deed conveying the property to Archer Paper Company was executed on May 27, 1954, and was filed for registration on June 9, 1954. On October 19, 1956, suit was instituted by Hames and his wife to remove the Sheriff's deed as a cloud on the title to the land involved.

The court quoted the Supreme Court opinion written by Mr. Justice McKinney in *McCoy v. Hight*, 162 Tenn. 507, 39 S.W.2d 271 (1931), as follows:

> "Under our registration laws a deed is not effectual against creditors, even with actual notice of an unregistered instrument, until placed on record. . . . [Citations omitted.]
>
> "These decisions are based upon section 3752 of Shannon's Code . . . which is as follows: 'Any of said instruments not so

---

2. In *Moore v. Dinning*, 158 Tenn. 374, 13 S.W.2d 798 (1929), the Supreme Court reached the same result concerning land held under an unregistered title bond for seven years, holding there was no difference between the effect of possession by a vendee holding under a deed and one holding under a bond for title. The defensive right arising from seven years' adverse possession under color of title prevailed against the judgment creditor of the vendor, seeking to subject the land to satisfaction of his claim.

proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice, and, in case of marriage contracts, shall be void as to existing or subsequent creditors of the husband, or purchasers from him without notice.'" *McCoy v. Hight,* 162 Tenn. 507, 509, 39 S.W.2d 271 (1931).

Hames' counsel asserted that the case was controlled by the decision of the Supreme Court in *City National Bank and Trust Co. of Miami, Florida v. City of Knoxville, supra.* Counsel contended that Mrs. Hames' (the appellant's) adverse possession of the land should entitle her to the result reached in *City of Knoxville.* The court pointed out that the fallacy of this contention was that Mrs. Hames' adverse possession had been for a period of only *four* years whereas that for the City of Knoxville had been for a period of *nine* years, "or two years more than the minimum of seven years required by the applicable statute of limitations." [3] The court then went on to say, "If this adverse possession had been for as much as seven years, instead of for only a little more than four years, the Knoxville case would be controlling in favor of Mrs. Hames and she would be entitled to a decision in her favor on its authority." [4]

In *Moore v. Walker,* 178 Tenn. 218, 156 S.W.2d 439 (1941), A. E. Moore made a deed to Keel Moore, his son, on January 31, 1935. The deed, however, was not registered until February 7, 1935. On February 5, 1935, John T. Walker filed an attachment bill against A. E. Moore and an attachment was levied on the same day the bill was filed. Chief Justice Green noted that, prior to the filing of Walker's bill and the levy of the attachment, A. E. Moore could have sold the land and made a deed thereto, but until the deed had been recorded "... A. E. Moore remained the owner of the land so far as Walker, his creditor, was concerned. The unrecorded deed was void and non-existent as to Walker. Code, § 7668." *Id.* at 441.

■ More than fifty years ago, District Judge (George C.) Taylor observed that the penalty imposed by § 3752 of Shannon's Code (now T.C.A. § 64–2603) was harsh but he also pointed out that his decision was to be settled by the decisions of the Tennessee Supreme Court. *In re Sweat, supra.* The decision of this court in the present case is likewise to be settled by the decision of the district court and the Tennessee Supreme Court: the rights of the trustee, a judicial lien creditor, holding an execution returned unsatisfied, as of the commencement of the bankruptcy case, and without regard to any knowledge of the trustee, or of any creditor, are superior to the rights of the defendants, holding under an unregistered deed. 11 U.S.C. § 544(a)(1), (2).

This determination makes unnecessary any ruling relating to the rights of the trustee as a bona fide purchaser under § 544(a)(3).

The court has carefully reviewed the cases cited by the defendants but finds for the most part that those cases do not reach the crux of the issue, i.e., the rights of levying creditors vis-a-vis the rights of those claiming under an unregistered deed. Nor does the court conclude, as insisted by the defendants, that § 541 under the facts of the present case defeats the trustee's recovery under § 544(a) of the Bankruptcy Code. To read § 541 as insisted by the defendants would emasculate the "recov-

---

3. In the present case, defendants had been in possession a little less than one year.

4. "Seven year period runs from time right accrued—Extent of possession.—(a) No person or anyone claiming under him shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located." T.C.A. 28–2–103.

ery" provisions of the Code, not only § 544 but also §§ 547 and 548. Further, the filing by the trustee of the lis pendens notice after the registration of the defendants' deed is immaterial. By statute the rights and powers of the trustee under § 544(a) are determined as of the date of the filing of the petition. 11 U.S.C. § 544(a).

The court's decision is not a pleasant one. As noted by Judge Taylor, *In re Sweat, supra,* the penalty imposed for nonobservance of the recording statutes in this state is "harsh." Further, as pointed out by the Supreme Court more than eighty years ago, most courts do not go so far in the construction of recording statutes similar to ours.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 752.

Submit Judgment within five days.