FILED
07/06/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 31, 2022 Session

## PEGGY MATHES ET AL. v. 99 HERMITAGE, LLC

**Appeal from the Chancery Court for Davidson County**
**No. 17-52-IV    Russell T. Perkins, Chancellor**

_____

### No. M2021-00883-COA-R3-CV
_____

This appeal involves a real property dispute.  Resolution of the competing interests ultimately turns on the propriety of certain adverse possession claims that have been asserted.  Following a bench trial, the trial court determined that there was no adverse possession established due to its finding that Mr. Whiteaker, a former record owner of the property, had "acquiesced in, and permitted" the possession of Mr. Eads, an original plaintiff in this action who is now deceased.  Judgment was accordingly entered in favor of the Appellee herein, an entity that purchased the property at a sheriff's sale.  The Appellants, who assert rights to the property by dint of Mr. Eads' alleged adverse possession, submit that there is no evidence to support the trial court's view that Mr. Eads' possession was subservient to Mr. Whiteaker.  For its part, the Appellee maintains that several considerations countenance against the assertion of adverse possession rights.  Having considered the various issues and arguments raised by the parties, we hold that the judgment of the trial court should be reversed, as we conclude that Mr. Eads previously acquired title to the property by common law adverse possession.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Reversed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

James C. Bradshaw, III, and Frank H. Reeves, Nashville, Tennessee, for the appellants.

Charles Michels and L. Gino Marchetti, Jr., Nashville, Tennessee, for the appellee.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

The real property in dispute in this case, which the trial court described as "commercial property near downtown Nashville," was previously owned by Raymond Whiteaker. Moreover, as is of relevance to the present dispute, the property was at one time the site of operations for Brake-Tech, Auto Brake Centers, Inc. ("Brake-Tech"), a business that was incorporated by Ora Eads and Gary Duplex in 1984. According to the deposition testimony of Mr. Eads,[1] who is now deceased, his wife, Eleanor, was never a shareholder in Brake-Tech. According to him, shares in Brake-Tech were initially issued to him and Mr. Duplex. When Mr. Duplex later left the business, Mr. Eads claimed he became the sole shareholder of Brake-Tech. Stock certificates in the record, which on their face reflect 40,000 shares originally each being issued to Mr. Eads and Mr. Duplex, contain notations of assignment on their back reflecting that these shares were all ultimately transferred to Mr. Eads. Mr. Eads testified that he did not remember any other shares ever being issued.

Following Mr. Duplex's exit from the business, in July 1986, Mr. Whiteaker executed an installment deed conveying the real property at issue to Brake-Tech. The corresponding promissory note associated with this transaction was signed by Mr. and Mrs. Eads. Both sides acknowledge that Brake-Tech was administratively dissolved in 1988 before the promissory note was satisfied. Later, in December 1990, Mr. Whiteaker made a notation on the promissory note indicating that the obligation had been paid in full.

Of note, the installment deed was not recorded incident to its execution. In fact, Mr. Whiteaker held onto the deed until after the promissory note was satisfied. However, even after the note was satisfied in 1990, there was no contemporaneous recording of the deed. It was not until 2016 that Mr. Eads pursued efforts to record the deed.

Although Mr. Eads was not a record owner of the property during the period at issue in this appeal,[2] he treated the property as his own and held it out to the public as such. Indeed, following Brake-Tech's cessation of operations and during the period of time in dispute, Mr. Eads leased the property out to multiple tenants. Further, he paid for the property's utilities during tenant vacancies, paid for multiple repairs and upkeep to the building located on the property such as bringing the electrical system up to code, while also using the building for storage and as an office space when not occupied by tenants.

---

[1] Mr. Eads' deposition testimony was played at trial, and the corresponding transcripts were also admitted into evidence. Mr. Eads, who was diagnosed with pancreatic cancer a few months before his December 2017 deposition, died in January 2018.

[2] As discussed in more detail later, the Appellants are attempting to establish that adverse possession by Mr. Eads occurred for a period of twenty years from February 7, 1991.

Mr. Whiteaker, who was the record owner of the property, died in April 2014. According to the deposition testimony of his estate administrator, which was admitted into evidence at the eventual trial of this matter, the property at issue was not referenced in Mr. Whiteaker's will. Moreover, the estate administrator found no reference to the property when marshalling the assets of the estate. It was the administrator's understanding that neither of Mr. Whiteaker's children had any recollection of the property or that their father had owned it.

Of note to the present dispute, several years before Mr. Whiteaker's death, on September 4, 2009, a foreign judgment was enrolled against him in the Davidson County Circuit Court. This order was then subsequently recorded in the Davidson County Register's office on September 11, 2009. Both sides acknowledge that this created a judgment lien on any real property owned by Mr. Whiteaker in Davidson County, but as is of much dispute among the parties, the holder of the judgment lien, SPCP Group, LLC, did not commence an action[3] to enforce the judgment lien and sell the property until June 17, 2016. The Appellee in this appeal, 99 Hermitage, LLC ("99 Hermitage"), later purchased the property on January 19, 2017, at a sheriff's sale.[4]

The present litigation, which was originally commenced by Mr. and Mrs. Eads in the Davidson County Chancery Court the day before the aforementioned sheriff's sale, initially sought, among other things, a determination that 99 Hermitage had no right or claim against them with respect to the property.[5] For its part, 99 Hermitage ultimately asserted claims for trespass and ejectment in the trial court proceedings.[6] In an amended complaint filed by Mr. and Mrs. Eads, it was specifically asserted that Mr. Eads had adversely possessed the property for over twenty years such that a grant of the property "should be presumed" in his favor under the common law. Further, the amended complaint specifically asserted defensive rights pursuant to Tennessee Code Annotated section 28-2-103.

Many issues were vigorously contested in connection with the parties' competing claims to the property, including pertaining to what effect, if any, should be given to an individual bankruptcy proceeding pursued by Mrs. Eads in 2010. Trial in the case occurred in the fall of 2018, and upon the conclusion of the proof, the matter was taken under advisement. By the time the trial court entered its "Memorandum and Final Order" in July 2021, both Mr. and Mrs. Eads were deceased,[7] and their representatives, the Appellants

---

[3] It does not appear that the Eadses were parties to this enforcement action.

[4] A few months after the enforcement action was commenced, on November 16, 2016, the installment deed to Brake-Tech was recorded.

[5] The complaint anticipated that 99 Hermitage would bid at the sheriff's sale.

[6] Although other parties were originally named in this litigation, and other claims were asserted by 99 Hermitage at one time, we restrict our discussion herein to that which is relevant to the issues on appeal.

[7] Mr. Eads passed away in January 2018, which was many months before the trial commenced. According to the trial court's July 2021 order, Mrs. Eads passed away in August 2020.

herein, had been substituted as parties.

In its July 2021 final order, the trial court granted relief in favor of 99 Hermitage, albeit while rejecting several arguments 99 Hermitage had offered in support of its position. In articulating the basis for its conclusion that Mr. Eads' adverse possession claims were ultimately without merit, the trial court held that his possession was not sufficiently proven to be adverse or hostile because, allegedly, "Mr. Whiteaker acquiesced in, and permitted, Mr. Eads' possession of the Property during his lifetime." This appeal followed.

## DISCUSSION

As the Tennessee Supreme Court has noted, the doctrine of adverse possession can operate "not only as a bar to recover adversely possessed property but it may also vest the adverse holder with title." *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375 (Tenn. 2007). Here, the latter aspect of adverse possession is certainly at issue, as the Appellants contend that Mr. Eads acquired title to the property by adversely possessing the land for over twenty years. However, the Appellants also offer arguments in relation to the doctrine's role as a limiting principle on attempts to recover land. Indeed, two forms of adverse possession are at issue in this appeal: (1) common law adverse possession and (2) defensive, statutory adverse possession under Tennessee Code Annotated section 28-2-103. "[C]ommon law adverse possession rests upon the proposition 'that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed.'" *Id.* at 376-77 (quoting *Ferguson v. Prince*, 190 S.W. 548, 552 (Tenn. 1916)). Under Tennessee Code Annotated section 28-2-103, "No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued." Tenn. Code Ann. § 28-2-103.

"In order to establish adverse possession under [the common law], or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time." *Cumulus Broad, Inc.*, 226 S.W.3d at 377. As for common law adverse possession, upon which the Appellants primarily stake their claim for recovery, "[c]olor (or assurance) of title is not required." *Id.* The burden of proof is on the one claiming ownership by adverse possession, "and the quality of the evidence must be clear and convincing." *Id.* Title vests when the adverse possessor holds the land for a period of twenty years. *Id.*

As noted earlier, in connection with its decision to deny relief to the Appellants, the trial court held that Mr. Whiteaker had "acquiesced in, and permitted, Mr. Eads' possession of the Property during his lifetime." The Appellants no doubt challenge the trial court's conclusion in this regard, but for its part, 99 Hermitage argues in its brief that there is not even the potential for an adverse possession claim in this context inasmuch as Mr. Eads

- 4 -

possessed the property under an unrecorded deed.[8]  We address this concern first before reviewing the trial court's holding pertaining to an alleged acquiescence on the part of Mr. Whiteaker and turning to other arguments 99 Hermitage has asserted in opposition to the Appellants' claims.

### *Theoretical Viability of an Adverse Possession Claim?*

99 Hermitage insists that, because of the unrecorded deed in this case, there can be no adverse possession.  Its reasoning is predicated on the notion that, vis-à-vis a grantor, a grantee who possesses under an unrecorded deed has superior ownership rights, and therefore, being the "true owner in such situation," the grantee cannot be said to possess adversely.  Based on the case law emanating from the Tennessee Supreme Court, however, it is clear to us that adverse possession is a tenable theory that grantees possessing land under an unrecorded deed may assert to overcome competing interests from third parties.  In *City National Bank & Trust Co. of Miami, Fla. v. City of Knoxville*, 11 S.W.2d 853 (Tenn. 1928), an individual, one J. T. Toms, conveyed by deed a lot to the city of Knoxville in May 1918.  *Id.* at 853.  The city immediately possessed and fenced the lot, but the deed for the property transaction was not recorded.  *Id.*  Later, in July 1926, a bank loaned Mr. Toms money, but Mr. Toms defaulted on the note.  *Id.*  The bank obtained a judgment against Mr. Toms in 1927, and in April 1928, a levy was made on the lot possessed by the city, "as the property of Toms."  *Id.* at 853-54.  In affirming an ensuing chancellor's decree in favor of the city, the Tennessee Supreme Court reasoned in relevant part as follows:

> 1 Section 2, c. 28 of the Acts of 1819, carried into Thompson's Shannon's Code at section 4458, is as follows:
>
> "No person, or anyone claiming under him, shall have any action, either at law or in equity, for any lands, tenements, or hereditaments, but within seven years after the right of action has accrued."
>
> Under the foregoing, a naked trespasser who may have taken and held possession of land, or land of another adversely for seven years, without any color or pretense of right, is protected in that possession to the extent of his inclosures. Dyche v. Gass, 11 Tenn. (3 Yerg.) 397; Wallace v. Hannum, 20 Tenn. (1 Humph.) 443, 34 Am. Dec. 659; Hammett v. Blount, 31 Tenn. (1 Swan) 385.
>
> This possessory right, or defensive title as it is sometimes called, continues as long as the actual possession is maintained.

---

[8] As discussed herein, the deed was made out to Brake-Tech.  Yet, the trial court found that Mr. Eads, the sole owner of Brake-Tech at its dissolution, received whatever interest Brake-Tech had in the property.

> The indebtedness of Toms to the bank, as before stated, was incurred . . . more than eight years after his deed to the city was made and the possession of the city began.
>
> . . . .
>
> An unregistered deed is held void as against creditors of the vendor, notwithstanding they are creditors subsequent to such deed and have actual knowledge thereof.
>
> . . . .
>
> But suppose, as to the bank, the deed herein is absolutely void and treated as nonexistent. Nevertheless the bank is profited little, if at all. *The right of the city to hold this land does not depend on the deed so long as its possession is maintained.* The possessory right of the city is complete by reason of the statute without any deed at all. Until the possession of the city is surrendered, the right to possession of said lot is not remitted to the holder of the legal title.

*Id.* at 854 (emphasis added).

The year following the *City of Knoxville* decision, the Supreme Court again considered the concept of adverse possession by one holding land under an unregistered instrument, this time in relation to a bond for title. *See Moore v. Dinning*, 13 S.W.2d 798 (Tenn. 1929). In *Moore*, when litigation ensued over rights to the land as a result of judgments obtained by the vendor's creditors, an adverse possession defense was interposed on behalf of those who had held under a bond for title. *Id.* A chancellor entered a judgment generally in favor of the judgment creditors, and this Court affirmed, holding that the vendees' possession under a bond for title was not adverse to their vendor or the vendor's judgment creditors. *Id.* 798-99. We regarded there to be a possession of a subordinate character in the particular factual context of the case. *Id.* at 799. In relaying this Court's decision, the Supreme Court noted in part as follows:

> The [Court of Appeals] held applicable to a vendor and his creditors the same principle which applies to mortgagors and mortgagees; that is, that adverse possession by a mortgagor will not defeat the mortgagee's rights. **While recognizing that, where the purchaser "is in possession under a deed purporting to convey an absolute title to the land, he will be considered as holding adversely to the grantor**," citing authorities, the [Court of Appeals] says:

- 6 -

> "But where one enters and holds possession under an executory contract of purchase (Knox v. Thomas, 24 Tenn. [5 Humph.] 573) or bond for title, the entry and possession are in subordination to the vendor, and such a privity exists which precludes the idea of a hostile possession pending the completion of the contract, which could silently ripen into title by adverse possession under the statute of limitations. Such possession retains its subordinate character until payment, or until the vendee has distinctly and unequivocally repudiated the title of his vendor and has given the vendor notice to this effect. 2 C. J. 151, §§ 268, 269; Gudger v. Barnes, 51 Tenn. (4 Heisk.) 570; Shannon's New 1917 Code, § 4461, and note 5.

*Id.* (emphases added).

The Supreme Court reversed, favorably cited to *City of Knoxville*, and held as follows:

> The case before us presents but one question, and that one of law: Is the possession of lands by a vendee, holding under a *bond for title*, pending payment of the balance purchase money, adverse to that of his vendor? We are unable to agree with the learned Court of Appeals in holding that such a possession is "in subordination to the vendor," and that, on the theory of an existing privity, "such possession retains its subordinate character until payment, or until the vendee has distinctly and unequivocally repudiated the title of his vendor and has given the vendor notice to this effect," *except* in so far as the lien of the vendor for balance purchase money is concerned, and his right to enforce this lien against the land.

> The Court of Appeals cites 2 C. J. p. 151, §§ 268, 269, from which the language employed has been substantially taken; also Knox v. Thomas, 24 Tenn. (5 Humph.) 573, Gudger v. Barnes, 51 Tenn. (4 Heisk.) 570, and section 4461 of Shannon's Code. The two Tennessee cases, supra, are those cited from this state by Corpus Juris to sustain the text. A careful review of the decisions in this state fails to sustain the distinction taken by the learned Court of Appeals between the effect of the possession of a vendee holding under a deed and one holding under a bond for title. The first headnote to Gudger v. Barnes, supra, reads as follows: "The possession of a purchaser of land by title bond is not adverse to the claim of the vendor *to a lien* on the land for his purchase money." We italicize the distinguishing words, the force of which has been perhaps overlooked by the author of Corpus Juris and by the learned Court of Appeals, for an examination of the opinion in that case shows that the court, while holding that the possession of the vendee under a title bond is "not adverse to the lien or right contracted for by the

vendor," overruling Ray v. Goodman, 33 Tenn. (1 Sneed) 586, on this point, quite emphatically declared that "so far, then, as the possession of the land under the title bond goes, it is a possession for himself [the vendee], and adverse to the right of possession of the vendor, so that, if such vendee shall hold possession under the title bond, and purchase evidenced by it, seven years, he would be protected against any possessory action, or action in law or equity, on the part of the vendor," and therefore of the vendor's creditors, "in which the vendor should seek to oust him of his possession, and obtain it for himself."

. . . .

In the instant case the vendees under title bond had held possession for seven years, and the complainants acquired no lien upon the land in question by reason of their judgments against Dinning and the filing of their bill, which takes priority over the defendant Lockeridge's possessory right to the land. See City Nat. Bank & Trust Co. v. Knoxville (Tenn.) 11 S.W.(2d) 853.

*Id.* at 799–800. The theoretical propriety of an adverse possession claim for possessors under unregistered instruments has since been countenanced by this Court, heeding the clear direction from our Supreme Court. *See Hames v. Archer Paper Co.*, 319 S.W.2d 252, 257 (Tenn. Ct. App. 1958) (acknowledging *City of Knoxville* as valid but observing that no relief was available to party who held under the authority of unrecorded deed because possession had existed "only a little more than four years"); *Jones v. Mosley*, 198 S.W.2d 652, 655-56 (Tenn. Ct. App. 1946) (citing favorably to *City of Knoxville*, noting that adverse possession under an unregistered deed had been sufficiently proven, but holding that the defense was unavailable for failure to timely plead). In short, the concept of "adversity," which is of course applicable to both common law and statutory forms of adverse possession, is not undermined simply because an alleged adverse possessor possesses property under an unrecorded instrument.

### Was Mr. Eads' Possession Subservient?

As already noted, the trial court ultimately rejected the claims of adverse possession in this case upon finding that Mr. Eads' possession was not adverse because of Mr. Whiteaker's alleged acquiescence in it. Indeed, the court found that Mr. Eads' possession had merely been "permitted." The record simply does not support the trial court's finding about the character of Mr. Eads' possession. Indeed, there does not appear to be anything to support a conclusion that Mr. Eads' possession during the period at issue was with the permission of anyone.

The trial court placed some emphasis on the fact that there had been an installment deed transaction, as it referenced this in support of its conclusion that there was permission

to possess the land, noting that "[t]here was the Deed, the installment note." It went on to further reference the "apparent understanding that Mr. Whiteaker would hold the Deed pending full payment." Assuming *arguendo* that Mr. Whiteaker's initial physical possession of the deed prior to satisfaction of the debt somehow connoted mere "permission" for Mr. Eads to possess at that time (a notion that the trial court seems to be postulating in its order), the record reflects that the debt was satisfied before the period the Appellants claim Mr. Eads established adverse possession.[9]

As for the specific period at issue, the Appellants' adverse possession claims are, as mentioned in an earlier footnote, temporally predicated on Mr. Eads' adverse possession beginning on February 7, 1991.[10] Not only does there appear to be no evidence to support a finding that Mr. Eads' possession in the succeeding twenty years was with the permission of anyone,[11] he clearly exercised dominion over the property during that period and treated it as his own, leasing it out in his own name to multiple tenants, using it for storage and as an office space, and paying for upkeep on the building. The trial court's articulated basis for rejecting the adverse possession claims in this case, i.e., an alleged lack of adversity, is simply not supported for the reasons detailed above, and the evidence in the record otherwise sufficiently established that Mr. Eads adversely possessed the land in question for a period of over twenty years without any effort to eject him. We therefore conclude that Mr. Eads acquired title to the property under Tennessee law.[12] In reaching this conclusion, and as discussed further below, we necessarily find no favor in certain other arguments 99 Hermitage has raised in an attempt to defeat Mr. Eads' establishment of adverse possession claims regarding the property.

---

[9] Even accepting the trial court's apparent view that the installment transaction and Mr. Whiteaker's initial physical possession of the deed somehow evidenced mere "permission" for Mr. Eads' possession, it is somewhat unclear on what basis the trial court believed that the alleged permissive nature of Mr. Eads' possession continued. Indeed, the trial court itself noted that Mr. Whiteaker delivered the deed to Mr. Eads after the debt was satisfied. As an aside, the trial court's noted reliance on the installment deed transaction itself is somewhat curious, in light of other observations in its order, as it relates to its conclusion on an alleged lack of adversity. Indeed, the trial court, upon referencing the previously-cited *Moore* decision that discussed how vendees holding under a bond for title possess adversely to their vendor, stated as follows: "A bond for title appears to be roughly equivalent to an installment deed. In any event, the parties have not pointed to any operative distinction between these two kinds of purchase money real estate transactions."

[10] No arguments are pursued on appeal to establish an earlier commencement of adverse possession. The February 1991 date is tied to the ending of bankruptcy proceedings in which Mr. Eads was involved.

[11] Again, although the trial court specifically concluded that Mr. Whiteaker had permitted and acquiesced in Mr. Eads' possession, any semblance of such a relationship between Mr. Eads and Mr. Whiteaker regarding the property is totally absent based on our review of the record, certainly insofar as the twenty-year period at issue is concerned.

[12] In light of our ultimate conclusion on this issue, i.e., that title was acquired to the property, we pretermit examination into the question of 99 Hermitage's raised issue as to whether, if only defensive rights to the property had been acquired by Mr. Eads, that these defensive rights were extinguished, at the latest, at Mrs. Eads' death, and would not inure to the benefit of the Appellants.

*Continuity of Mr. Eads' Exclusive Adverse Possession*

In addition to 99 Hermitage's general concern noted earlier in this Opinion about the potential viability of an adverse possession theory for Mr. Eads due to the unrecorded deed that was made out to Brake-Tech, which we have rejected, 99 Hermitage has argued that any adverse possession that occurred was interrupted and tolled at various points during the time period in question. The first event it relies upon is the 2009 recording of the judgment lien by SPCP Group, LLC, which according to 99 Hermitage, having occurred "prior to 20 years passing" relative to the period at issue, ended any claim to common law adverse possession.[13] In support, it relies upon Tennessee Code Annotated section 66-24-119, which states in pertinent part as follows:

> Judgments, attachments, orders, injunctions, and other writs affecting title, use or possession of real estate, issued by any court shall be effective against any person having, or later acquiring, an interest in such property who is not a party to the action wherein such judgment, attachment, order, injunction, or other writ is issued only after an appropriate copy or abstract, or a notice of lis pendens, is recorded in the register's office of the county wherein the property is situated.

Tenn. Code Ann. § 66-24-119.

No doubt, this statute predicates the attachment of a lien upon the recording of various writs affecting real estate, but it is unclear to us how it affects the principles of adverse possession at issue here so as to thwart the ripening of title. After all, a mere recording of a lien in no way works to challenge a person's possession, as a legal action regarding the property, for example, would. *See, e.g.*, *Frinks v. Horvath*, No. E2016-00944-COA-R3-CV, 2017 WL 782720, at *11 (Tenn. Ct. App. Feb. 28, 2017) (noting that "the determinative time period tolls with commencement of the action").

As cautioned in American Jurisprudence, "[t]he recordation of the judgment during the adverse occupancy does not halt the running of the statute." 3 Am. Jur. 2d *Adverse Possession* § 158 (May 2022 Update); *see also Hillsborough Inv. Co. v. Lawyers Trust Co.*, 3 So.2d 870, 871 (Fla. 1941) (noting that it "would be illogical to hold that the effect of the adverse possession was halted by the recordation of the judgment"). Consistent with that warning, American Jurisprudence notes that "[a]dverse possession may run against a judgment creditor of the titleholder to land" and that "where a judgment creditor sits by and fails to enforce a judgment while the actual possession of an adverse claimant ripens into title, the latter has the superior right." 3 Am. Jur. 2d *Adverse Possession* § 158 (May 2022 Update).

---

[13] As noted earlier, enforcement proceedings regarding the lien did not occur until 2016.

Here, within the twenty-year period at issue concerning Mr. Eads' claim for title by adverse possession, no person or entity took efforts to disrupt or disturb Mr. Eads' exclusive possession of the property, and as noted above, we regard 99 Hermitage's reliance on the 2009 lien recording to be immaterial. Because Mr. Eads' adverse possession went unchallenged and was uninterrupted for over twenty years, he acquired title.

In reaching this conclusion, we also reject 99 Hermitage's reliance on another event, specifically the individual bankruptcy proceeding pursued by Mrs. Eads in 2010. The alleged relevance of this event is implicated through the last issue raised in 99 Hermitage's principal brief: whether the trial court erred in finding that Mr. Eads was the sole adverse possessor of the real property. According to 99 Hermitage, Mrs. Eads should have been considered as a co-tenant, and because of that, it further argues that her bankruptcy cut off "any common law adverse possession that was accruing, and further terminated any defensive, possessory interest held by Eleanor or Ora Eads."

99 Hermitage's proffered legal argument is, therefore, predicated at the outset on the premise that Mrs. Eads should be regarded as an adverse possessor of the property during the period in question. We agree with the trial court's effective conclusion that the proof established *Mr. Eads* as the adverse possessor in this case.[14] Significantly, during the twenty-year period in question, the record clearly paints a picture of Mr. Eads exercising dominion and ownership rights with respect to the property, not Mrs. Eads. Aside from the fact that Mr. Eads used the property building for an office space on occasion, all leases in the relevant period relied upon were notably entered into by *Mr. Eads alone* as lessor/owner of the property.[15] Whereas Mr. Eads was therefore exercising dominion over the property and positioning himself as owner during the period at issue (and to the exclusion of anyone else), Mrs. Eads was demonstrably not. 99 Hermitage's argument about the 2010 bankruptcy is therefore of no moment.

## CONCLUSION

As discussed herein, we find no merit in the arguments 99 Hermitage has offered in an attempt to establish that the adverse possession that occurred in this case was interrupted and tolled before the satisfaction of the twenty-year period in question. Indeed, as we have previously discussed, the record clearly shows that Mr. Eads adversely possessed the property for twenty years so as to acquire title. The judgment of the trial court in favor of 99 Hermitage is accordingly reversed, and the matter is remanded to the trial court for the entry of judgment in favor of the Appellant.

---

[14] The property itself had been deeded to Brake-Tech, a corporation that the court found Mr. Eads had been the sole owner of at its dissolution.

[15] Although the trial court held in the alternative that Mrs. Eads' bankruptcy otherwise had no effect to "terminate" adverse possession if both she and Mr. Eads had interests in the property, we pretermit consideration of the issue.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE